881 P.2d 1270

**Rebecca M. HUSSEY, Plaintiff–Appellant,**

**v.**

**Benjamin A. HUSSEY III, Defendant–Appellee.**

**No. 15696.**

Intermediate Court of Appeals of Hawai'i.

Sept. 30, 1994.

---

Max Nakata Garcia, on the briefs, Honolulu, for plaintiff-appellant.

Ronald P. Tongg, on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

BURNS, Chief Judge.

Plaintiff Rebecca M. Hussey (Rebecca), nka Rebecca Maude Ah Nee, appeals the property division part of the family court's October 21, 1991 Decree Granting Divorce and Awarding Child Custody (Divorce Decree). We vacate and remand the property division part of the Divorce Decree for reconsideration in the light of this opinion.

## FACTS

Rebecca and defendant Benjamin A. Hussey III (Benjamin) were married on June 22, 1974. Their children were born as follows: son—October 1, 1974; son—February 11, 1976; and daughter—January 20, 1978. Rebecca and Benjamin separated on April 27, 1990.

At the time of trial in May 1991, Rebecca's gross income was $1,110.72 per month. Benjamin's gross income was $1,216 per month.

The Divorce Decree awarded Rebecca custody of the three children and ordered Benjamin to pay Rebecca $330 per month child support. The valuable assets were awarded subject to their debts as follows:

To Benjamin:

1. A residence at 3229 Hoʻolulu Street, Kapahulu. Benjamin inherited a remainder interest in this residence in 1967 subject to a life estate in favor of his uncle (Uncle) who also lived there. Uncle was 81 years of age at the time of trial. The fair market value of this residence in February 1977 was $84,500, and in April 1991 was $410,000. Since there is no evidence in the record of the value of this residence on June 22, 1974, we assume that its June 22, 1974 value is the same as its February 1977 value. This residence was the marital residence from the June 22, 1974 marriage until the April 27, 1990 physical separation. At the time of trial, it was security for a debt of $120,000 owed by Rebecca, Benjamin, and Uncle and payable at the rate of $1,500 per month. This mortgage debt was the culmination of a series of mortgage debts incurred during the marriage to pay for Rebecca's and Benjamin's personal and family expenses and to refinance prior mortgage debts incurred for the same purposes.

2. A $5,100 Toyota truck subject to a $4,000 debt.

To Rebecca:

1. A residence at 1478 Kaleilani Street, Pearl City. Rebecca's mother, who died in 1983, willed this residence to Rebecca and named Rebecca as her personal representative. Apparently, the other assets in Rebecca's mother's estate and the rent Rebecca collected were insufficient to pay for the mortgage, real property tax, and other expenses of the property, so Rebecca paid the difference. Rebecca's mother's estate did not close until 1989. However, "the heirs of a decedent acquire a vested interest in the estate upon the decedent's death." *Matter of Christian's Estate,* 65 Haw. 394, 399, 652 P.2d 1137, 1141 (1982) (citations omitted). Since there is no evidence in the record of the value of this residence in 1983, we assume that its 1983 value is the same as its value at the time of trial in May 1991. At

the time of trial, the residence had a fair market value of $175,000 subject to Rebecca's mortgage debt of $80,000 payable at the rate of $840 per month. Rebecca testified that she used $6,500 or more from the proceeds of this mortgage debt to pay delinquent payments due on the debt secured by Benjamin's Kapahulu residence.

2. A $2,000 First Hawaiian Bank Money Market Certificate inherited from her mother.

3. The proceeds from the sale of her 1987 Mazda. The value of the 1987 Mazda had been estimated at $11,000. There is no evidence of the amount of the sale proceeds.

Attorney Richard McMillan testified that, according to Internal Revenue Service Valuation Tables, in 1977, when Uncle was 67 years of age, Uncle's life estate was worth .45458 of the value of the Kapahulu residence, *see* Research Institute of America, 4 *Estate Planning and Taxation Coordinator* § 82,705 at 82,710C (May 10, 1968), and in 1991, when Uncle was 81 years of age, his life estate was worth .45501 of the value of the residence. *See id.* at 82,704F (March 12, 1991). However, the family court decided that "the valuation done by Mr. McMillan doesn't carry much weight in the value—in valuing the remainder and the life estate" and in its calculations valued Benjamin's interest in the Kapahulu residence as if it were not encumbered by Uncle's life estate.

Categorized as permitted by *Tougas v. Tougas,* 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994), the various net market values (NMVs) were awarded as follows:

|  | REBECCA | BENJAMIN |
| --- | --- | --- |
| CATEGORY 1 |  | $ 84,500 |
| CATEGORY 2 |  | 205,500 |
| CATEGORY 3 | $97,000 |  |
| CATEGORY 4 |  |  |
| CATEGORY 5 | 11,000 | 1,100 |

The family court expressed two reasons for its decision not to award Rebecca any of Benjamin's $205,500 Category 2 NMV:

[Y]ou make an argument that the property—Ho['']olulu Street—was a marital asset and that both parties contributed to the build up of the appreciation of the property.

Unfortunately I cannot agree with that based on what I've heard. I—I—obviously the money and—that was borrowed used the home as a collateral. It was a source to get the money, it was the basis to get the money.

But I didn't hear a shred of evidence that said that—unlike the Hashimoto case—the money was used to fix a roof, to put new tiles, to make an addition, to fix the garage, et cetera, et cetera.

The only testimony I heard was that the money was used to buy cars, pay off credit card loans, buy—buy clothes for the children and other household items.

So, I cannot agree with that—with that position that this—this—this property was used so much for—for the building up of the property and the appreciation that has gone with it.

Like the real estate in Hawai['']i, the home just being where it's at[,] irregardless [sic] probably of the state that it's in[,] appreciation worked on itself and it just built up just because it was in Kapahulu in a nice location.

And, you know, you look at the fact that the home is twenty-three years old. And it's incredible to think that that home is now worth over four hundred thousand dollars.

So, I cannot agree with you on that argument.

And ... looking at the equity of this, if I were to follow your position and grant your client ...—half of the appreciation—there's only one way that that distribution could be made, and that would have to be the selling of the home.

And is that fair, just and equitable in this situation?

And I think even you and your client would have to admit that that's not fair, just and equitable.

There is no indication on the record that the family court considered where Benjamin

would obtain the money to pay the $1,500 per month mortgage debt on the Kapahulu residence or what he would do if he could not pay it.

### DISCUSSION

#### I.

█ Rebecca contends that the family court erred when it failed to enter findings of fact and conclusions of law. We agree. Hawai'i Family Court Rules (HFCR) Rule 52(a) states in relevant part as follows:

> [U]pon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none has been entered, unless the written decision or "decision and order" of the court contains findings of fact and conclusions of law[.]

HFCR Rule 52(a) requires a notice of appeal and either a written decision, a written decision and order, or written findings of fact and conclusions of law.

However, as we indicated in *Burgess v. Arita*, 5 Haw.App. 581, 594, 704 P.2d 930, 939, *reconsideration denied* 5 Haw.App. 682, 753 P.2d 253 (1985),

> findings are not jurisdictional and the appellate court may decide the appeal without further findings if it feels that it is in a position to do so. The appellate court will determine the appeal without more if the record sufficiently informs it of the basis of decision of the material issues[.]

9 Wright & Miller, *Federal Practice & Procedure: Civil* § 2577 (1971) (footnotes omitted). As shall be seen, the transcript of the family court's oral decision enables us to decide this appeal without written findings.

#### II.

In *Gussin v. Gussin*, 73 Haw. 470, 836 P.2d 484 (1992), the Hawai'i Supreme Court concluded that:

1. Marriage is a partnership to which both parties bring their financial resources as well as their individual energies and efforts and, in divorce proceedings regarding division and distribution of the parties' estate, partnership principles guide and limit the range of the family court's choices; and

2. Hawai'i's appellate courts review the family court's division and distribution of the estate of the parties in divorce cases under the abuse of discretion standard "in view of the factors set forth in HRS [Hawai'i Revised Statutes] § 580–47 [ (1985 and Supp.1992) ] and partnership principles of law." *Id.* at 486, 836 P.2d at 492.

In *Tougas, supra,* the Hawai'i Supreme Court concluded that:

1. The family court is permitted to utilize the construct of five categories of NMVs in determining the equitable division of property in divorce cases;

2. Since marriage is a partnership, principles of partnership law (Partnership Model) should be applied by the family courts in exercising their discretion in the adjudication of property division in divorce proceedings; and

3. If there is no agreement between the spouses defining the respective property interests, partnership principles dictate an equal division of the marital estate where the only facts proved are the marriage itself and the existence of jointly owned property.

█ *Tougas* used the terms "marital estate," "marital properties," "separate properties," and "joint property." Seeking as much clarity and precision as is possible in the context of the Partnership Model, we will use the following three terms as defined herein:

**Premarital Separate Property.** This was the property owned by each spouse immediately prior to their marriage or cohabitation that was concluded by their marriage. Upon marriage, this property became either Marital Separate Property or Marital Partnership Property.

**Marital Separate Property.** This is the following property owned by one or both of the spouses at the time of the divorce:

a. All property that was excluded from the marital partnership by an agreement in conformity with the Hawai'i Uniform Premarital Agreement Act (HUPAA), HRS chapter 572D (Supp.1992). The HUPAA states in relevant part as follows:

> § 572D–3 **Content.** (a) Parties to a premarital agreement may contract with respect to:
>
> (1) The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;
>
> (2) The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;
>
> (3) The disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event;
>
> \*    \*    \*    \*    \*    \*

b. All property that was excluded from the marital partnership by a valid contract. *Tougas,* 76 Hawai'i at 24, 868 P.2d at 442; and

c. All property that (1) was acquired by the spouse-owner during the marriage by gift or inheritance, (2) was expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.

**Marital Partnership Property.** All property that is not Marital Separate Property.

■ Although Marital Separate Property cannot be used by the family court to "offset," *Id.* at 32, 868 P.2d at 450, the award of Marital Partnership Property to the other spouse, it can be used by the family court to "alter … the ultimate distribution of [Marital Partnership Property] based on the respective separate conditions of the spouses." *Id.* In other words, Marital Separate Property is property that has been validly excluded from the marital partnership. Although the family court may allow Marital Separate Property to reasonably influence the division and distribution of Marital Partnership Property, it cannot award any Marital Separate Property to the non-owner spouse. Consequently, the five categories of NMVs listed in *Tougas,* 76 Hawai'i at 27, 868 P.2d at 445, apply only to Marital Partnership Property, not to Marital Separate Property.

As stated in *Gussin,* the distribution of Marital Partnership Property under the Partnership Model is stated in HRS § 425–118(a) (1985) as follows:

> Each partner shall be repaid the partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to the partner's share in the profits.

*Gussin,* 73 Haw. at 483–84, 836 P.2d at 491.

■ The Partnership Model assumes that all valid and relevant considerations are equal. *Tougas* used the phrases "[i]n deviating from the otherwise appropriate equal division[,]" *Tougas,* 76 Hawai'i at 31, 868 P.2d at 449, and "deviation from the equal division of the Tougases' joint property." *Id.* at 32, 868 P.2d at 450. These phrases are consistent with the Partnership Model notions that, concerning the five categories of Marital Partnership Property NMVs:

1. The Category 1 and 3 NMVs are the "partner's contributions" to the Marital Partnership Property that, assuming all valid and relevant considerations are equal, are repaid to the contributing spouse; and

2. The Category 2, 4, and 5 NMVs are Marital Partnership Property that, assuming

all valid and relevant considerations are equal, are awarded one-half to each spouse.

■ If the family court rightly decides that all valid and relevant considerations are not equal, the family court must assess and weigh all valid and relevant considerations, exercise its equitable discretion, and decide whether and, if so, how much to deviate from the Partnership Model.

*Gussin* and *Tougas* do not require the family court to state what considerations caused it to deviate from the Partnership Model. The following explains our reasons for recommending such a requirement.

■ As we have noted in section I above, when there is an appeal, the family court is required to enter some form of findings of fact and conclusions of law, but is not required to state what considerations motivated its decision to deviate as it did from the Partnership Model. If the family court does only what is required of it, appellate review will be based on assumptions, not facts. The appellate courts will have no way of knowing whether the family court complied with the rule that "[t]he partnership model is the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings." *Tougas,* 76 Hawai'i at 28, 868 P.2d at 446. Moreover, the appellate courts will not be able to review the validity and relevance of the considerations that actually motivated the family court to deviate as it did from the Partnership Model.

■ In the Husseys' case, the family court voluntarily did what we recommend the family be required to do in contested divorce cases when deciding to deviate from the Partnership Model's division and distribution of property. The family court stated its reasons for deviating from the applicable model. We now review the validity and relevance of those reasons.

The facts show that the $205,500 NMV is Benjamin's Marital Partnership Property Category 2 NMV. With respect to this $205,500 Category 2 NMV, the Uniform Starting Point (USP) was an award of 75% to Benjamin and 25% to Rebecca. The family court started at this USP, exercised its discretion, decided to deviate from the USP as much as possible, awarded Benjamin 100% and Rebecca 0%, and stated two reasons for the maximum deviation. Thereafter, *Gussin* and *Tougas* replaced the USPs with the Partnership Model which, as we have noted above, awards Category 2 NMVs one-half to each spouse assuming all valid and relevant considerations are equal.

The two reasons given orally by the family court for its maximum deviation from the applicable model do not authorize a deviation from the Partnership Model.

■ First, the fact that the money borrowed by Rebecca and Benjamin and secured by a mortgage on the Kapahulu property was not used to improve the Kapahulu property is not a valid and relevant consideration for deviating from the Partnership Model. Under the Partnership Model, a Category 2 NMV is Marital Partnership Property that, assuming all valid and relevant considerations are equal, is awarded one-half to each spouse. A spouse's involvement or non-involvement in the existence of a Category 2 NMV is not a valid and relevant consideration for deviating from the Partnership Model. The fact that the spouse-non-owner did not directly and materially contribute to a Category 2 NMV is not a valid and relevant consideration for awarding the spouse-non-owner less than one-half of that Category 2 NMV.

■ Second, it is no more inequitable to require Benjamin to sell the Kapahulu residence than it is to not award Rebecca her Partnership Model equitable portion of it. Therefore, although this reason is a valid and relevant consideration, it does not establish the necessary inequality.

## CONCLUSION

Accordingly, we vacate the property division part of the family court's October 21,

1991 Decree Granting Divorce and Awarding Child Custody and remand for reconsideration in the light of this opinion.