923 P.2d 960

**Jerilyn KREYTAK, Plaintiff–Appellant,**

**v.**

**James Francis KREYTAK, Defendant–Appellee.**

**No. 16608.**

Intermediate Court of Appeals of Hawai'i.

Sept. 19, 1996.

Jeffry R. Buchli (Carroll, Smith & Buchli, of counsel), on the briefs, Honolulu, for plaintiff-appellant.

Harold Chu, Russell H. Ando and Denise M. Miyasaki (Chu & Ando, of counsel), on the brief, Honolulu, for defendant-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

BURNS, Chief Judge.

In this divorce case between Plaintiff–Appellant Jerilyn Kreytak (Jerilyn) and Defendant–Appellee James Kreytak (James), Jerilyn appeals the child support part and the division and distribution of property and debts part[1] of the family court's October 26, 1992 Decree Granting Absolute Divorce and Awarding Child Custody[2] (Divorce Decree).

Regarding the child support part, we remand. If, on remand, the facts of this case are determined to be within the mandate of Hawai'i Revised Statutes (HRS) § 571–52.3 (1993), the family court shall amend the Divorce Decree to comply with that statutory mandate.

Regarding the division and distribution of property and debts part of the Divorce De-cree, we vacate and remand for further proceedings consistent with this opinion.

## FACTS

James was born on February 25, 1946. Jerilyn was born on September 30, 1947. James and Jerilyn married on April 21, 1978.

In 1972 James purchased the lease of Lot 284 in Kawela Bay as a home for him and his wife prior to Jerilyn.

James and Jerilyn began living together at 59–181 F Ke Nui Road (Ke Nui Property) in October 1975. In 1976 James purchased the Ke Nui Property by an Agreement of Sale. Title was placed in Jerilyn's name because James was then in the process of divorcing his prior wife.

Shortly after their marriage in 1978, James and Jerilyn adopted three Korean orphans whose names and birthdates are as follows: Mark, April 25, 1970; Jennifer, May, 5, 1970; and Emily, December 25, 1971.

On May 25, 1978 Jerilyn and James borrowed money from First Hawaiian Bank, paid the Ke Nui Property Agreement of Sale, and Jerilyn conveyed the Ke Nui Property to Jerilyn and James, secured by a first mortgage. On November 27, 1979 the parties borrowed $30,000 from First Federal Savings and Loan secured by a second mortgage. They used $5,000 to construct an addition on the Ke Nui Property. The remaining $25,000 went to Jerilyn.

James and Jerilyn separated in May 1980 when James moved from the Ke Nui Property. Jerilyn and the children remained on the Ke Nui Property until December 1980. James paid the mortgage payments. James paid approximately $1,000 per month to Jerilyn from May 1980 through July 1990.

In November 1983 James refinanced the Ke Nui Property. Jerilyn testified that

---

**1.** [Hawai'i] divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. *Black v. Black*, 6 Haw.App. [493], 728 P.2d 1303 (1986).
*Eaton v. Eaton*, 7 Haw.App. 111, 118, 748 P.2d 801, 805 (1987).

**2.** Notwithstanding its title, the family court's October 26, 1992 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree) did not award custody of any of the three children, the youngest of whom was twenty when the Divorce Decree was entered. However, it did award child support because the youngest was a full-time college student.

James misled her to believe that the transaction was only a refinancing and that she was unaware that the document she signed was a deed to James. James testified that Jerilyn knowingly deeded her interest in the property to him and was paid for her half as follows: the appraised value of the property was $184,100; after subtracting the $43,011.37 first mortgage and the $26,773.86 second mortgage, Jerilyn's one-half was valued at $57,157.38; the $41,600 net proceeds of the refinancing were paid to Jerilyn; and James also purchased a Mazda 626 for Jerilyn by paying $1,000 down and $248 per month for 48 months, a total of $12,904. It appears that the family court believed James and disbelieved Jerilyn.

In 1981 the lease rent for the Kawela Bay Property was increased from $150 per year to $3,600 per year. In 1985 James received a notice evicting him from the Kawela Bay Property. Jerilyn loaned James $500 to commence litigation against Chaney Brooks. James testified that he repaid Jerilyn by purchasing a plane ticket for her at a cost of $1,478. From 1985 to 1989 James spent approximately $45,000 in legal fees to acquire the fee interest in the Kawela Bay Property. The fee interest was acquired in 1989 for $166,453.66.

On or about June 15, 1989, James sold the Kawela Bay property for $240,000. Sixty-eight thousand dollars of the purchase price was paid by a promissory note. The interest rate was 11%. Monthly payments were $595 commencing August 1, 1990. At the time of the divorce, the note was past due.

The parties filed joint tax returns through 1985. James prepared Jerilyn's individual tax returns for 1986, 1987 and 1988.

In 1986 James' mother gifted him 78 shares of Scherring Plough stock.

In 1989 James retired from Windward Volkswagen. For his sixteen years in the retirement plan, he received a lump sum payment of $31,948.

Jerilyn filed her Complaint for Divorce on June 4, 1991. The trial was held on September 24, 1992.

Defendant's Exhibit SS indicates that Jerilyn was a self-employed "Administrative/Business Consultant" earning $750 per month. Defendant's Exhibit QQ indicates that James was unemployed but had a gross monthly receipt of $2,600.

Emily was a full-time college student and the Divorce Decree ordered Jerilyn to directly pay Emily support of $30 per month and ordered James to directly pay Emily support of $380 per month. The other two children were adult non-students.

Defendant's Exhibit RR shows that at the time of trial, James had the following assets and liabilities:

| Item | Market Value | Debt |
| --- | --- | --- |
| Sherring Plough | $ 4,134 | |
| Ke Nui Property | ? | $100,000 |
| Furnitures | 1,000 | |
| Fishing Equipment | 500 | |
| Painting | 1,500 | |
| Promissory Note | 60,000 | |
| FHB Yes Check | | 1,900 |
| FHB VISA | | 800 |
| FHB Mastercard | | 800 |
| BOH VISA | | 1,000 |

## THE DIVORCE DECREE'S RESPONSES TO JERILYN'S REQUESTS

The gross market value of the Ke Nui Property was $540,000 as of October 11, 1991. Jerilyn asked that it be sold, the two mortgages totalling approximately $100,000 paid, and the net proceeds divided between the parties. The Divorce Decree awarded the Ke Nui Property to James, subject to all debts related thereto.

Jerilyn requested that she be awarded one-half of the promissory note for the Kawela Bay property. The Divorce Decree awarded it to James.

Jerilyn requested that she be awarded the following share of James' retirement: 1/2 X 14/16 X $31,948. The Divorce Decree awarded her $1,684.25 based on the following formula: 1/2 X 2/16 X $26,948.

Jerilyn requested that she be awarded one-half ($2,340) of the net market value (NMV) ($4,680) of James' Scherring Plough stock. The Divorce Decree awarded all of the Scherring Plough stock to James.

The Divorce Decree ordered each party to be responsible for his or her own attorney fees and costs.

## RELEVANT FINDINGS OF FACT

The property division part of the Divorce Decree was based on the following findings in the family court's October 26, 1992 Decision and Order.[3]

8. The Court finds that the parties' economic partnership ended as of May, 1980 with their physical separation.

9. Any economic support to [Jerilyn] provided by [James] was based upon [James'] legal obligation to pay support for the parties' adopted children.

10. Since the parties' separation in May, 1980, [James] has been solely responsible for the real properties situated at 59–181F Ke Nui Road and Kawela Bay Lot 284. [Jerilyn] has had nothing to do with these properties since the separation in May, 1980.

11. [James] paid to [Jerilyn] in November of 1983 the sum of $41,600, approximately one-half (1/2) of the market value of the Ke Nui Road Property.

12. [Jerilyn's] contribution to the Ke Nui Road Property was nominal.

13. The Kawela Bay property was an investment property owned by [James] from his prior marriage. [Jerilyn's] contribution was limited and [Jerilyn] exercised no control over said property.

## JERILYN'S POINTS ON APPEAL

Jerilyn's points on appeal are essentially as follows:

A. The oral finding that the parties' finances and economic maintenance have been done separately is proved wrong by the facts that the parties filed joint income tax returns through 1985, that James supported her until July 1990, and that they gave money to each other at various times during the separation;

B. The written finding that all of the economic support James provided during the separation was based upon James' legal obligation to pay support for the children is proved wrong by the fact that James continued to make the payments after the children were no longer living with Jerilyn;

C. The oral and written findings that, after the May 1980 separation, Jerilyn has had nothing to do with the Ke Nui Property and the Kawela Bay property are proved wrong by the facts that she and the children lived on the Ke Nui Property until December 1980 and that she and James jointly owned the Ke Nui Property until November 17, 1983;

D. The written finding about Jerilyn's conveyance of her interest in the Ke Nui Property in 1983 and her receipt of approximately one-half of its NMV at the time is proved wrong by her evidence that she thought the paperwork she signed was for refinancing the house, and that one-half of the NMV of the Ke Nui Property at the time was $57,212.38;

E. The written finding that Jerilyn made no economic contribution to the Kawela Bay Property and that her contact with it consisted of an occasional cleaning, collection of rents, and a gratuitous contribution of $500 for legal fees for a matter related to it is proved wrong by the facts that she wrote checks, found tenants, cleaned the property in between tenants, provided the cash to commence the litigation, and testified for James during the litigation;

F. The oral and written findings that the economic partnership ended when the parties separated in May 1980 are proved wrong by the facts that they jointly owned the Ke Nui Property until November 1983, they filed joint tax returns from 1978 through 1985, Jerilyn assisted James with the Kawela Bay Property litigation in 1986–87, James supported Jerilyn until July 1990, they gave each other money during the separation, and

---

**3.** On October 26, 1992 the family court filed its Divorce Decree at 2:49 p.m. and then at 2:50 p.m. filed its Decision and Order. Although they should have been filed in reverse order, the fact that they were not is inconsequential in this appeal.

The attorney for Plaintiff–Appellant did not sign the Divorce Decree. However, he signed the Decision and Order under the words "APPROVED AS TO FORM AND CONTENT." Since it is obvious that Plaintiff–Appellant did not intend to approve the content of the Decision and Order, we will disregard her attorney's signature indicating her approval.

a joint checking account was maintained up to the granting of the divorce;

G. The property distribution is inequitable because it allegedly "gives [James] over $500,000.00 and gives [Jerilyn] only $1,684.25";

H. The formula used by the family court for dividing James' retirement benefit should have been 14/16 rather than 2/16; and

I. The family court's denial of an order for income assignment was wrong because both parties receive income on a periodic basis and HRS § 571–52.3 (1993) requires an order for income assignment for child support where the obligor receives income on a periodic basis.

## DISCUSSION

### I.

■ The first of HRS § 571–52.3's two sentences state that

[i]n any case where child support is an issue, and an order for child support is established or modified, and the obligor receives income on a periodic basis, the court shall concurrently enter an order for immediate income withholding which shall operate as an assignment by the person to the child support enforcement agency for the benefit of the child of such amounts at such times as may be specified in the support order.

James contends that "it was impractical for an Order for Income Assignment to be entered" because he "works as a commercial fisherman on several boats," "does not have a single employer," and "[h]is income varies with the catch." We conclude that, although impossibility is an excuse, impracticality is not. Consequently, we agree with Jerilyn that the family court erred when it refused to comply with the mandate of HRS § 571–52.3. If, on remand, the facts of this case are determined to be within the mandate of HRS § 571–52.3, the family court shall amend the Divorce Decree to comply with that statutory mandate.

### II.

■ The marital partnership began in October 1975. *Malek v. Malek,* 7 Haw.App. 377, 768 P.2d 243 (1989); *Raupp v. Raupp,* 3 Haw.App. 602, 609, 658 P.2d 329, 335, note 7, 8 (1983). The parties' economic partnership with respect to Marital Partnership Property ends when a divorce decree is entered, not when they physically separate. *Markham v. Markham,* 80 Hawai'i 274, 287, 909 P.2d 602, 615 (App.), *cert. denied,* 80 Hawai'i 357, 910 P.2d 128 (1996). The marital partnership terminated in October 1992. *Myers v. Myers,* 70 Haw. 143, 764 P.2d 1237, *reconsideration denied,* 70 Haw. 661, 796 P.2d 1004 (1988).

■ It is possible for the marital partners, during the marital partnership, to exclude some or all Marital Partnership Property from the marital partnership by a valid contract and thereby to convert the excluded Marital Partnership Property into Marital Separate Property. *Hussey v. Hussey,* 77 Hawai'i 202, 207, 881 P.2d 1270, 1275 (App. 1994). In the absence of a valid conclusion that a valid contract between the parties converted James' retirement benefit into Marital Separate Property, the family court's conclusion that after May 1980 James' retirement benefit was not Marital Partnership Property subject to the *Stouffer v. Stouffer,* 10 Haw.App. 267, 867 P.2d 226 (1994), *Linson v. Linson,* 1 Haw.App. 272, 618 P.2d 748 (1980) formula, is wrong.

However, the retirement benefit issue may be moot. When James retired in 1989, he was paid his benefit in cash. The Divorce Decree divided the assets and debts of the parties at the time of the divorce in October 1992. James' Asset and Debt Statement dated September 9, 1992 does not show any retirement benefit or its cash equivalent. There is no evidence in the record that James wasted this asset in contemplation of divorce. Therefore, we do not understand the part of the Divorce Decree that states that "Plaintiff shall be awarded an interest in Defendant's retirement benefit pursuant to the [*Linson* ] formula."

### III.

 Since there is no evidence that the parties, by a valid contract during the marital partnership, excluded the Scherring Plough stock from the marital partnership, the NMV of the Scherring Plough stock is not Marital Separate Property, it is a Marital Partnership Property Category 3 NMV, or it is a combination of Marital Partnership Property Category 3 and 4 NMVs. Assuming all valid and relevant considerations are equal, Category 3 NMVs are awarded to the owner spouse, and Category 4 NMVs are awarded one-half to each spouse. *Hussey*, 77 Hawai'i at 207–08, 881 P.2d at 1275–76. The family court did not decide the question whether all valid and relevant considerations are equal.

### IV.

Since there is no evidence that the parties, by a valid contract during the marital partnership, excluded the Kawela Bay Property Note from the marital partnership, the NMV of the Kawela Bay Property Note is not Marital Separate Property. It is a Marital Partnership Property Category 1 and/or 2 NMV. *Id.* Assuming all valid and relevant considerations are equal, Category 1 NMVs are awarded to the owner spouse, and Category 2 NMVs are awarded one-half to each spouse. *Id.*

If the parties, by a valid contract during the marital partnership, excluded the Ke Nui Property from the marital partnership, the NMV of the Ke Nui Property is Marital Separate Property. If the NMV of the Ke Nui Property is not Marital Separate Proper-

ty, it is Marital Partnership Property. If it is Marital Partnership Property, it is a Category 5 NMV. *Tougas v. Tougas*, 76 Hawai'i 19, 27, 868 P.2d 437, 445 (1994). Assuming all valid and relevant considerations are equal, Category 5 NMVs are awarded one-half to each spouse. *Hussey*, 77 Hawai'i at 207–08, 881 P.2d at 1275–76. The family court did not decide the question whether all valid and relevant considerations are equal.

The fact that Jerilyn had nothing or little to do with the Kawela Bay Property or the Ke Nui Property since the May 1980 separation is not a valid and relevant consideration for deviating from the Partnership Model. *Id.*

### CONCLUSION

Accordingly, with respect to the division and distribution of property and debts part of the October 26, 1992 Decree Granting Absolute Divorce and Awarding Child Custody, we vacate and remand for reconsideration in accordance with this opinion.

With respect to the child support part, we remand. If, on remand, the facts of this case are determined to be within the mandate of HRS 571–52.3 (1993), the family court shall amend the October 26, 1992 Decree Granting Absolute Divorce and Awarding Child Custody to comply with that statutory mandate.