122 P.3d 288

**Donni S. HELBUSH, Plaintiff–Appellant/Cross–Appellee,**

**v.**

**Roy S. HELBUSH, Defendant–Appellee/Cross–Appellant.**

No. 25862.

Intermediate Court of Appeals of Hawai'i.

Oct. 6, 2005.

Lloyd Van De Car, on the briefs, for Plaintiff–Appellant/Cross–Appellee.

James Biven, Kailua Kona, on the briefs, for Defendant–Appellee/Cross–Appellant.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant/Cross–Appellee Donni S. Helbush (Donni or Plaintiff) appeals, and Defendant–Appellee/Cross–Appellant Roy S. Helbush (Roy or Defendant) cross-appeals, from the family court's [1] April 30, 2003 Divorce Decree (Divorce Decree).

Donni filed a notice of appeal on May 28, 2003. Roy filed a notice of cross-appeal on June 12, 2003. This case was assigned to this court on February 18, 2004.

We vacate (1) parts of the March 13, 2003 Order on Trial Held on November 1 and December 5, 2002, (2) all of the April 11, 2003 Order Awarding Attorney's Fees and Costs, and (3) parts of the Divorce Decree, and remand for reconsideration in the light of this opinion. In all other respects, we affirm.

## BACKGROUND

During a part of 1989, both Donni and Roy were forty-four years of age, not working, and independently supporting themselves from premarital assets.

Donni and Roy began cohabiting in 1990. Their Kāne'ohe residence was owned by the Roy Searle Helbush Revocable Living Trust (RSH Trust). In this case, for all relevant purposes, the RSH Trust's assets are treated as if they are Roy's assets.

Gladys S. Helbush is Roy's mother. The Irrevocable Trust of Gladys S. Helbush (GSH Trust) owns about 310 acres of real property in Ka'ū, Island of Hawai'i. Roy is the sole trustee.

Shortly after they began cohabiting, Donni and Roy decided that they would farm the Ka'ū property. Initially, they planted protea. They lived at the Kāne'ohe residence on the island of Oahu and commuted to the Ka'ū property. While farming the Ka'ū property, they stayed in a trailer purchased by Roy.

In 1992, the RSH Trust sold the Kāne'ohe residence and purchased a residence in Waimea on the Island of Hawai'i for $228,000. Donni and Roy lived part-time in the Waimea residence and part-time in the trailer on the Ka'ū property. They both farmed the Ka'ū property. When they realized that growing protea would not be profitable, they switched to kava and coffee. The coffee plantation on the Ka'ū property is not yet profitable, but may be in 2005.

The date of the marriage (DOM) of Donni and Roy is June 6, 1993. It was Donni's third marriage and Roy's second marriage. Donni filed a complaint for divorce on March 12, 2002.

On June 27, 2002, the court entered an "Order Granting in Part Plaintiff's Motion for Temporary Relief" requiring Roy to pay (1) temporary alimony of $750 per month commencing May 15, 2002, (2) "both his and [Donni's] one-half share of the household expenses, including but not limited to those expenses listed on the parties' Income and Expense Statements[,]" and (3) $2,000 to Donni's attorney on or before June 15, 2002. This order enjoined the parties from wasting assets over and above what is necessary for regular expenses and the ordinary course of business. It allowed the parties to continue to share the use of the residence and the trailer, but awarded to each the exclusive use of a bedroom in the residence.

The court's August 5, 2002 "Order Denying Defendant's Motion for Reconsideration" denied Defendant's Application and Motion for Reconsideration seeking reconsideration "on grounds that the court's findings [sic] was that [Donni's] reasonable needs [were ]$750 per month plus one half of the utilities. [Donni's] income at the date of the hearing was $500 per month."

On March 13, 2003, the court entered an Order on Trial Held on November 1 and December 5, 2002, containing separately numbered decisions and separately numbered orders. They state, in relevant part, as follows:

---

1. Judge Aley K. Auna, Jr., presided.

14. [Donni] has assisted in farming the Ka'u property for approximately twelve (12) years (1990 through 2002).

## KA'U PROPERTY

15. The GSH Trust directs the trustee to pay the income from the Ka'u property as follows: 60% to [Roy] and 40% to [Roy's] sister during the lifetime of [Roy's] mother.

16. When [Roy's] mother dies, the GSH Trust terminates and the trust property is distributed as follows: 60% to [Roy] and 40% to [Roy's] sister. If [Roy] predeceases his mother, his share is distributed equally "to his living lawful issue, *per stirpes*, or should no such issue then be living, such share shall go to augment the share then held for the benefit of, and that previously distributed to" [Roy's] sister.

17. [Roy's] mother is still living.

18. [Roy's] interest in the Ka'u property is a future or expectant beneficiary interest. In other words, his ownership of his share of the Ka'u property is contingent only upon him surviving his mother.

19. A future or expectant beneficiary interest under the facts of this case is not a marital asset.

20. The Ka'ū property is not part of the marital estate and not subject to property division.

## WAIMEA RESIDENCE

21. The Waimea residence was purchased on August 26, 1992 for $228,000. There is no mortgage on this property. Even though the Waimea residence is owned by the RSH Trust, it is solely controlled by [Roy] and his interest is not a future or expectant beneficiary interest. Thus, this property is Category 1 property. The DOM [date-of-marriage] value is $228,000.

22. The DOCOEPOT [date of the completion of the evidentiary part of the trial] value of the Waimea residence is $260,000. Thus, the Category 2 value is $32,000.

23. [Roy] is awarded the Waimea residence.

## SPOUSAL SUPPORT

. . . .

## [ROY'S] STOCKS OWNED PRIOR TO DOM AND INHERITANCE RECEIVED DURING MARRIAGE

31. Prior to DOM, [Roy] had about $100,000 in stocks. Much of this premarital asset was cashed during the marriage and used for the benefit of the marriage.

32. After DOM, [Roy] received an inheritance from his aunt in the amount of about $132,000 and about $100,000 was placed into [Roy's] Merrill Lynch account. Of the remaining amount, $30,000 was used to purchase a truck and the rest apparently used for miscellaneous expenses. During the marriage, this inheritance was used for the benefit of the marriage.

33. As of DOCOEPOT, there was approximately $7,000 remaining (from the stocks and inheritance) in the Merrill Lynch account.

34. There is no evidence that these assets were designated as marital separate property.

35. A party is entitled to a Category 1 net market value ("NMV") capital contribution credit for an asset owned at the time of marriage, and a Category 3 NMV capital contribution credit for a gift or inheritance received during the marriage, even if the asset no longer exists. However, if the asset is still owned, and it has diminished in value, the capital contribution credit is limited to its current value.

36. Combining the stock value and inheritance together, [Roy's] capital contribution credit for these Category 1 and 3 assets is limited to $7,000.

37. [Roy] is awarded this $7,000.

## VEHICLES

38. The parties used two motor vehicles owned by [Roy]. [Donni] used the 1991 Buick given to [Roy] by his mother. [Roy] used the 1996 Chevy truck he purchased.

39. At DOCOEPOT, the 1991 Buick had a market value of $2,500 and the 1996 Chevy truck had a market value of $5,000. These are considered Category 5 assets.

40. [Donni] is awarded the 1991 Buick. [Roy] is awarded the 1996 Chevy truck.

. . . .

### OTHER MARITAL ASSETS

42. During the marriage, the parties purchased furniture and appliances for the Waimea residence and a fishing boat. At DOCOEPOT, the furniture and appliances had a market value of $5,000 and the boat had a market value of $4,000.

. . . .

44. The furniture, appliances, boat, and farm equipment are all Category 5 assets and [Roy] is awarded said assets.

. . . .

. . . .

. . . .

### ATTORNEY'S FEES AND COSTS

49. In applying the standards for awarding attorney's fees and costs found in § 580–47, H.R.S., it is equitable to require [Roy] to pay a portion of [Donni's] attorney's fees and costs.

### EQUALIZATION PAYMENT

50. Based upon the foregoing findings, conclusions, and orders, the distribution of assets and debts are as follows:

. . . .

Based upon the foregoing and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

. . . .

5. Within ten (10) days of the filing date of this Order, [counsel for Donni] shall file an Affidavit of Counsel regarding [Donni's] attorney's fees and costs and submit a separate order leaving a blank line for the amount to be awarded and when the amount should be paid. [Counsel for Roy] shall have ten (10) days to file a response, if he wishes. After considering the response, if any, the Court will complete and file the Order.

6. [Roy] shall pay to [Donni] within forty-five (45) days of the filing date of the Divorce Decree the sum of $14,750.

In an April 11, 2003 "Order Awarding Attorney's Fees and Costs", the court ordered Roy to pay an additional $4,300.00 for fees and costs incurred by Donni in the case.

### DISCUSSION

In *Hussey v. Hussey*, 77 Hawai'i 202, 881 P.2d 1270 (App.1994), this court stated, in relevant part:

Seeking as much clarity and precision as is possible in the context of the Partnership Model, we will use the following three terms as defined herein:

**Premarital Separate Property.** *This was the property owned by each spouse immediately prior to their marriage or cohabitation that was concluded by their marriage.* Upon marriage, this property became either Marital Separate Property or Marital Partnership Property.

**Marital Separate Property.** This is the following property owned by one or both of the spouses at the time of the divorce:

a. All property that was excluded from the marital partnership by an agreement in conformity with the Hawai'i Uniform Premarital Agreement Act (HUPAA), HRS chapter 572D (Supp.1992). The HUPAA states in relevant part as follows:

§ 572D–3 **Content.** (a) Parties to a premarital agreement may contract with respect to:

(1) The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;

(2) The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;

(3) The disposition of property upon separation, marital dissolution, death, or

the occurrence or nonoccurrence of any other event;

\* \* \*

b. All property that was excluded from the marital partnership by a valid contract[;] and

c. All property that (1) was acquired by the spouse-owner during the marriage by gift or inheritance, (2) was expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.

**Marital Partnership Property.** All property that is not Marital Separate Property.

Although Marital Separate Property cannot be used by the family court to offset, [sic] the award of Marital Partnership Property to the other spouse, it can be used by the family court to alter the ultimate distribution of Marital Partnership Property based on the respective separate conditions of the spouses. In other words, Marital Separate Property is property that has been validly excluded from the marital partnership. Although the family court may allow Marital Separate Property to reasonably influence the division and distribution of Marital Partnership Property, it cannot award any Marital Separate Property to the non-owner spouse. Consequently, the five categories of NMVs listed in *Tougas [v. Tougas]*, 76 Hawaiʻi [19,] 27, 868 P.2d [437,] 445[ (1994) ], apply only to Marital Partnership Property, not to Marital Separate Property.

77 Hawaiʻi at 206–07, 881 P.2d at 1274–75 (emphasis added; internal quotation marks, internal citations, brackets, and ellipsis omitted).

 In addition to the *Hussey* precedent quoted above, the following precedent guides the family court when deciding how to categorize, divide and distribute Marital Partnership Property:

Despite the inapplicability of the USPs [Uniform Starting Points], the family court is not without any direction in determining the equitable division and distribution of marital estates in that the family court can still utilize the construct of five categories of net market values (NMVs) in divorce cases:

Category 1. *The net market value (NMV), plus or minus, of all property separately owned by one spouse on the date of marriage (DOM) but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.*

Category 2. *The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT* [date of the conclusion of the evidentiary part of the trial].

Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.

Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.

Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

*Malek v. Malek*, 7 Haw.App. 377, 380–81 n. 1, 768 P.2d 243, 246–47 n. 1 (1989).

The NMVs in Categories 1 and 3 are the parties' capital contributions to the marital partnership. The NMVs in Categories 2 and 4 are the during-the-marriage increase in the NMVs of the Categories 1 and 3 properties owned at DOCOEPOT. Category 5 is the DOCOEPOT

NMV in excess of the Categories 1, 2, 3, and 4 NMVs. In other words, Category 5 is the net profit or loss of the marital partnership after deducting the partners' capital contributions and the during-the-marriage increase in the NMV of property that was a capital contribution to the partnership and is still owned at DOCOEPOT.

*Gardner v. Gardner,* 8 Haw.App. 461, [466], 810 P.2d 239, [242] (1991).

Armed with these general classifications, the family court is further guided in divorce proceedings by partnership principles in governing division and distribution:

Under general partnership law, "each partner is entitled to be repaid his contributions to the partnership property, whether made by way of capital or advances." 59A Am.Jur.2d Partnership § 476 (1987) (footnotes omitted). Absent a legally permissible and binding partnership agreement to the contrary, "partners share equally in the profits of their partnership, even though they may have contributed unequally to capital or services." *Id.* § 469 (footnotes omitted). Hawai'i partnership law provides in relevant part as follows:

**Rules determining rights and duties of partners.** The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

(a) Each partner shall be repaid the partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to the partner's share in the profits.

*Gardner v. Gardner,* 8 Haw.App. 461, 464–65, 810 P.2d 239, 242 (1991) (quoting HRS § 425–118(a) (1985)). Therefore, if there is no agreement between the husband and wife defining the respective property interests, partnership principles dictate an equal division of the marital estate "where the only facts proved are the marriage itself and the existence of jointly owned property." *Gussin[ v. Gussin],* 73 Haw. [470,] at 484, 836 P.2d [484,] at 491 (quoting *Hashimoto[ v. Hashimoto],* 6 Haw. App. [424,] at 427 n. 4, 725 P.2d [520,] at 522 n. 4 (1986)).

Accordingly, while the family court judges are accorded wide discretion pursuant to HRS § 580–47 in adjudicating the rights of parties to a divorce, the family court strives for "a certain degree of 'uniformity, stability, clarity or predictability' [in its decision-making and thus] are compelled to apply the appropriate law to the facts of each case and be guided by reason and conscience to attain a just result." *Gussin,* 73 Haw. at 486, 836 P.2d at 492. The partnership model is the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings.

*Tougas v. Tougas,* 76 Hawai'i 19, 27–28, 868 P.2d 437, 445–46 (1994) (emphases added).

The above precedent is ambiguous regarding situations involving a premarital cohabitation and/or a premarital economic partnership. We now seek to remove that ambiguity.

First, we reaffirm the definitions of the five categories of Marital Partnership Property stated in footnote 1 of *Malek v. Malek,* 7 Haw.App. 377, 380 n. 1, 768 P.2d 243, 246 n. 1 (1989).

Second, we reaffirm the following precedent:

Under the Partnership Model, assuming all valid and relevant considerations are equal,

1. The Category 1 and 3 NMVs are the "partner's contributions" to the Marital Partnership Property that, assuming all valid and relevant considerations are equal, are repaid to the contributing spouse; and

2. The Category 2, 4, and 5 NMVs are Marital Partnership Property that, assuming all valid and relevant considerations are equal, are awarded one-half to each spouse.

*Hussey v. Hussey,* 77 Hawai'i 202, 207–08, 881 P.2d 1270, 1275–76 (App.1994). We label this *Hussey* division the Partnership Model Division.

Thus, under the Partnership Model Division, Category 2, 4, and 5 NMVs are divided 50% to the owner and 50% to the nonowner. *Id.*

The Partnership Model requires the family court, when deciding the division and distribution of the Marital Partnership Property of the parties part of divorce cases, to proceed as follows: (1) find the relevant facts; start at the Partnership Model Division and (2)(a) decide whether or not the facts present any valid and relevant considerations authorizing a deviation from the Partnership Model Division and, if so, (b) itemize those considerations; if the answer to question (2)(a) is "yes," exercise its discretion and (3) decide whether or not there will be a deviation; and, if the answer to question (3) is "yes," exercise its discretion and (4) decide the extent of the deviation.

Question (2)(a) is a question of law. The family court's answer to it is reviewed under the right/wrong standard of appellate review. Questions (3) and (4) are discretionary matters. The family court's answers to them are reviewed under the abuse of discretion standard of appellate review.

*Jackson v. Jackson,* 84 Hawai'i 319, 332–33, 933 P.2d 1353, 1366–67 (App.1997) (footnote omitted).

Third, we note the precedent that

the trial court may award up to half of this during-marriage appreciation [of a Category 2 NMV] to the non-owning spouse if, under the totality of circumstances, it is just and equitable to do so. The trial court also may determine that a lesser award, or no award, is in order.

*Gussin v. Gussin,* 73 Haw. 470, 490, 836 P.2d 484, 494 (1992) (internal quotation marks, brackets, and citation omitted).

Fourth, we note the following precedent:

Husband states that "[n]o Hawai'i appellate court has ever expressly held that separately owned premarital property is part of the 'estate of the parties' and, therefore, subject to division pursuant to" law. He further states that "[t]here is no explicit authority permitting the division of the appreciated value of separately owned premarital assets in divorce cases." Both statements are wrong. The phrase "estate of the parties" as it is used in HRS § 580–47 means anything of present or prospective value, owned by either or both of the parties on the date of the conclusion of the evidentiary part of the trial (DOCOEPOT). The appreciated value of separately owned premarital assets is a combination of categories 1 and 2 net market values (NMVs). When dividing and distributing property, the family court may award no more than 50 percent of the NMVs in categories 1, 2, 3 or 4 to the nonowner spouse.

Husband argues that the family court "has no authority to distribute property before the economic partnership even existed." What he is really saying is that the family court cannot consider anything that happened before the parties were legally married. We disagree. The family court's discretion when dividing and distributing property and debts in divorce cases is not so restricted.

*Malek,* 7 Haw.App. at 380–81, 768 P.2d at 246 (internal quotation marks, citations, and some brackets omitted). Further, in *Malek,* this court stated:

Husband errs when he confuses this case with a palimony case. Here, premarital cohabitation matured into marriage. When the parties thereafter divorced, the family court, in the exercise of its duty to divide and distribute property in divorce cases, allowably considered their respective contributions to Husband's separate property during both their premarital cohabitation and subsequent marriage.

We now rephrase the above rule as follows (deleted words are bracketed and inserted words are underlined):

Husband errs when he confuses this case with a palimony case. Here, premarital cohabitation matured into marriage. When the parties thereafter divorced, the family court, in the exercise of its duty to divide and distribute property in divorce

cases, allowably considered their respective contributions to Husband's separate property during [both] their premarital [cohabitation] *economic partnership* and *their* subsequent marriage.

■ Fifth, we note the following precedent: "These decisions are consistent with the time honored proposition that marriage is a partnership to which both partners bring their financial resources as well as their individual energies and efforts. That one partner brings to the marriage substantially greater assets than the other does not make this any less the case." *Cassiday v. Cassiday*, 68 Haw. 383, 387, 716 P.2d 1133, 1136 (1986). We conclude that a "premarital economic partnership" occurs when, prior to their subsequent marriage, a man and a woman cohabit and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities.

## DONNI'S POINTS ON APPEAL

### A.

■ The decisions in the March 13, 2003 Order on Trial Held on November 1 and December 5, 2002 state in part:

> 18. [Roy's] interest in the Ka'u property is a future or expectant beneficiary interest. In other words, his ownership of his share of the Ka'u property is contingent only upon him surviving his mother.
>
> 19. A future or expectant beneficiary interest under the facts of this case is not a marital asset.
>
> 20. The Ka'u property is not part of the marital estate and not subject to property division.

Donni challenges nos. 19 and 20 above. It appears that "the facts of this case" referred to in no. 19 is the decision stated in no. 18.

We conclude that, on the DOM and on the December 5, 2002 DOCOEPOT, Roy owned the following two distinct interests in the GSH Trust. The first was a present lives interest. The second was a future contingent interest. His present lives interest was his right to sixty percent of the income of the GSH Trust while both he and his mother lived. His future contingent interest was his right to sixty percent of the assets of the trust if and when he survived his mother.

It appears that both Roy's present lives interest and his future contingent interest had a NMV (1) on the DOM, and (2) on the December 5, 2002 DOCOEPOT.[2] It appears that Roy's mother was age 73 in 1993 and age 82 in 2002. It appears that Roy was age 48 in 1993 and age 57 in 2002. Nothing on the record indicates that the health of either is better or worse than average. On the DOM and on the DOCOEPOT, Roy owned the right to sixty percent of the GSH Trust income, and that right continues as long as both Roy and his mother live. When Roy's mother dies, and if Roy survives her, Roy will then own sixty percent of the assets of the GSH Trust, including the Ka'u property. The following are relevant and material factual questions. As to (1) above, the DOM, and (2) above, the DOCOEPOT:

a. What was the net income of the GSH Trust?

b. What was the life expectancy (1) of Roy and (2) of Roy's mother?

c. What was the NMV of Roy's right to sixty percent of the GSH Trust's net income?

d. What was the NMV of the GSH Trust?

e. What was the NMV of Roy's future contingent interest in the GSH trust?

The family court must find whether Donni has satisfied her burden of proving the DOCOEPOT NMVs of Roy's (1) present lives interest to sixty percent of the income of the GSH Trust, and (2) future contingent interest to sixty percent of the assets of the GSH Trust. These DOCOEPOT NMVs are all Roy's Category 2 NMVs except to the extent that Roy satisfies his burden of proving the Category 1 NMVs of Roy's (1) present lives

---

**2.** The following is an example of a financial expectancy that has a present net market value: "A viatical settlement is an investment contract pursuant to which an investor acquires an interest in the life insurance policy of a terminally ill person—typically an AIDS victim—at a discount of 20 to 40 percent, depending upon the insured's life expectancy." *S.E.C. v. Life Partners, Inc.*, 87 F.3d 536, 537 (D.C.Cir.1996).

interest to sixty percent of the income of the GSH Trust and (2) future contingent interest to sixty percent of the assets of the GSH Trust.

### B.

Donni contends,

Even though there are no findings regarding the value of the Ka'u property, [Donni] believes that so long as the record is sufficient for this Court to make those findings, remand is not required.

... The only evidence presented to the Family Court regarding the value of Ka'u property on the date of marriage were the appraisals done by the County of Hawai'i Real Property Tax Office. According to those appraisals, the six properties had an aggregate value in 1993 of $90,500.00. On the date [Donni] and [Roy] married, [Roy's] mother was 73 years old. The value of [Roy's] interest on the date of marriage can be determined by using the Social Security Life Estate and Remainder Interest Tables. According to those tables, the value of the remainder interest when the life holder is 73 years old is 44.429% of the total. 44.429% of $90,500.00 is $40,208.25. [Roy] is entitled to 60% of this and his sister is entitled to the other 40%. Accordingly, the value of [Roy's] interest in the Ka'u property at the time of marriage was $24,124.95.

The only evidence presented at trial of the current market value of the Ka'u property came from [Donni's] expert, Robert Bloom. He provided a report, dated October 7, 2002 and testified at trial concerning what he had done in conducting his appraisal. He appraised the Ka'u property as having a value of $1,065,000.00. The value of [Roy's] interest on the date of the appraisal can be determined by using the same social security tables. On the date of trial, [Roy's] Mother was 82 years old. According to the tables, the remainder interest is worth 59.705% of the total value, in this case, $635,858.25. [Roy] owns 60% of that, or $381,514.95. The increase in the value of [Roy's] interest in the Ka'u property over the period of the marriage is $357,390.00.

(Citations to exhibits omitted.) For two reasons, we disagree. First, appellate courts ought not enter findings of fact. Second, even assuming that the value of the remainder interest when the life holder is 73 years old is 44.429% of the total value, and that the value of the remainder interest when the life holder is 82 years old is 59.705% of the total value, more factual questions must be answered. For example, recognizing that to receive any value, Roy must survive his mother, no less than the following questions must be answered. What was the life expectancy of Roy on those dates? What other facts, if any, would a prospective buyer reasonably need and want to know before offering to purchase Roy's present lives interest and/or future contingent interest?

### C.

Donni contends that the family court reversibly erred when it failed to find that the NMV of the Ka'u property was (1) $90,500 on the DOM and (2) $1,065,000 on the DOCOEPOT. On remand, the family court must find, based on the evidence, the NMV of the Ka'u property (1) on the DOM and (2) on the DOCOEPOT.

### ROY'S POINTS ON APPEAL

### A.

Roy contends that the family court reversibly erred when it awarded Donni temporary spousal support. Roy argues that absent a finding that Donni made reasonable efforts to generate income and attain self-sufficiency, the law requires that income be imputed to her at the amount she could reasonably earn and the court erred when it did not impute income to her and awarded her more than she needed. Roy further argues that he had no income and, therefore, no ability to pay. Upon a review of the record, we affirm the family court's award.

### B.

■ Roy contends that the family court erred in calculating the equalization payment by using an incorrect premarital value of the Waimea house ($228,000 versus $244,695) and

in categorizing certain personal property (1996 Chevy pickup truck, 1991 Buick, boat) as category 5 property. Specifically, Roy contends as follows:

> The house in Waimea, was bought prior to the marriage for a price of $228,000, with funds solely from the sale of [Roy's] house in Kaneohe. [Donni] did not contribute any money to the purchase of the Waimea house. [Roy] also spent about $16,695 of his own money to do some renovations on the house as is reflected in the 1992 tax returns. Thus, the cost basis and premarital value of the Waimea house is $244,695.... The trial court erroneously found the premarital value of the house at $228,000 instead of the $244,695 value considering the cost of the improvements made to the house after the purchase of the house but prior to the marriage....
>
> ....
>
> The 1996 Chevy pickup truck was purchased with separate property from [Roy's] inheritance. Thus it is a category 1 property and should be awarded to him as his sole and separate property.... The truck was titled under [Roy's] name only, again a category 1 property.... The 1991 Buick was a gift from [Roy's] mother (her car), and is category 1 property and should be awarded to [Roy] as his sole and separate property.... The boat was purchased with [Roy's] separate premarital asset.
>
> ....
>
> All three items should have been categorized as either category 1 or 3 property and not category 5 property as the lower court did in calculating the equalization payment.

Donni responds that "[i]t is apparent that at least with respect to the Buick, the truck, and the fishing boat, the parties treated them as property they owned together. Under those circumstances, it is fair to conclude that [Roy] gave his separate interest to the marital partnership." Donni does not identify how "the parties treated them as property they owned together." We note that proof of permission by the owner to use is not proof of the gift of title by the owner.

It appears, however, that the family court's decision regarding the division and distribu-

tion of the property and debts of the parties was flawed by the following errors. Conclusion no. 35 states the following relevant precedent:

> A party is entitled to a Category 1 net market value ("NMV") capital contribution credit for an asset owned at the time of marriage, and a Category 3 NMV capital contribution credit for a gift or inheritance received during the marriage, even if the asset no longer exists. However, if the asset is still owned, and it has diminished in value, the capital contribution credit is limited to its current value.

It appears that the family court misapplied this precedent in this case.

First, the family court found that Roy's expenditure of $16,695 of his own money to do some renovations on the Waimea house resulted in a $16,695 increase in the net market value of the house. Unless and until it is supported by valid evidence, this finding is clearly erroneous.

Second, the family court did not decide the source of the $16,695 and did not categorize it.

■ Third, The family court decided, in relevant part, as follows:

> 31. Prior to DOM, [Roy] had about $100,000 in stocks. Much of this premarital asset was cashed during the marriage and used for the benefit of the marriage.
>
> 32. After DOM, [Roy] received an inheritance from his aunt in the amount of about $132,000 and about $100,000 was placed into [Roy's] Merrill Lynch account. Of the remaining amount, $30,000 was used to purchase a truck and the rest apparently used for miscellaneous expenses. During the marriage, this inheritance was used for the benefit of the marriage.
>
> 33. As of DOCOEPOT, there was approximately $7,000 remaining (from the stocks and inheritance) in the Merrill Lynch account.
>
> ....
>
> 36. Combining the stock value and inheritance together, [Roy's] capital contri-

bution credit for these Category 1 and 3 assets is limited to $7,000.

In other words, the family court concluded that Roy's Merrill Lynch account was the "asset" referred to in no. 35, quoted above. This conclusion is wrong. The "asset" referred to in no. 35 is the "asset" within the Merrill Lynch account, namely, the "about $100,000 in stocks" Roy brought into the marriage. Many, if not all, of these stocks were sold during the marriage. The rule stated in the last sentence of no. 35 does not apply to the shares of stock that were sold during the marriage. It applies only to the shares of stock, if any, that were owned on the date of the commencement of the economic partnership and continuously thereafter to DOCOEPOT. The rule stated in the last sentence of no. 35 does not apply to a share of stock owned by a party on the date of the commencement of the economic partnership that was sold or otherwise conveyed during the marriage.

To the extent that a cash inheritance during the marriage has been spent during the marriage, it is not owned on DOCOEPOT. Therefore, the rule stated in the last sentence of no. 35 does not apply to that part of a cash inheritance during the marriage that has been spent during the marriage.

Conclusion no. 36 is wrong because it fails to recognize that Roy invested $100,000 in stocks and $132,000 in cash into the marital partnership. The fact that much of these NMVs were used for the benefit of the marriage does not change the fact that the $100,000 stocks are Roy's Category 1 NMV investment into the marital economic partnership and the $132,000 inheritance is Roy's Category 3 NMV investment into the marital economic partnership. Thus, the applicable precedent is as follows: "The Category 1 and 3 NMVs are the 'partner's contributions' to the Marital Partnership Property that, assuming all valid and relevant considerations are equal, are repaid to the contributing spouse[.]" *Hussey v. Hussey*, 77 Hawai'i at 207–08, 881 P.2d at 1275.

### C.

Roy contends that the court reversibly erred when it ordered him to pay $2,000 plus $4,300 of Donni's costs and attorney fees. We affirm the award of the $2,000 pursuant to the June 27, 2002 Order Granting in Part Plaintiff's Motion for Temporary Relief. We do not reach the issue of the award of the $4,300.

### CONCLUSION

We vacate and remand for reconsideration in the light of this opinion the following:

1. As to the March 13, 2003 Order on Trial Held on November 1 and December 5, 2002, decisions nos. 19, 20, 36, 37, the part of no. 39 that says that the 1991 Buick is a Category 5 asset, 49, and 50; and orders nos. 5 and 6.

2. The April 11, 2003 Order Awarding Attorney's Fees and Costs.

3. Paragraph nos. 4 (property division), 6 (equalization payment), and 8 (attorney's fees and costs) of the April 30, 2003 Divorce Decree.

In all other respects, we affirm.