**NANCY JEANNE STOUFFER**, Plaintiff–Appellant, v. **ROBERT BEDFORD STOUFFER**, Defendant–Appellee

NO. 15862

(FC–D NO. 133963)

JANUARY 28, 1994

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY BURNS, C.J.

The relevant events occurred chronologically as follows:

| | |
|---|---|
| August 1963 | Plaintiff Nancy Jeanne Stouffer (Nancy) and defendant Robert Bedford Stouffer (Robert) were married. |
| May 14, 1984 | Nancy filed her Complaint for Divorce. |
| December 31, 1984 | Nancy and Robert entered into an Agreement Incident to Divorce (AITD). |
| May 28, 1985 | The family court entered its Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree). The Divorce Decree approved and incorporated the AITD into the Divorce Decree by reference. |

| March 14, 1991 | Robert filed a Motion and Affidavit for Relief After Order or Decree (March 14, 1991 Motion). |
| --- | --- |
| August 19, 1991 | Nancy filed a Motion for Reconsideration, Further Hearing, Alteration and/or Amendment of Order (August 19, 1991 M/R). |
| December 11, 1991 | The family court entered its Order Regarding Defendant's Order to Show Cause for Relief After Order or Decree (December 11, 1991 Order Granting Motion). |
| December 11, 1991 | The family court entered its Order Regarding Plaintiff's Motion for Reconsideration, Further Hearing Alteration and/or Amendment of Order (December 11, 1991 Order Denying M/R). |
| February 25, 1992 | The family court entered its Findings of Fact and Conclusions of Law (FsOF and CsOL). |

Nancy appeals the family court's December 11, 1991 Order Granting Motion and December 11, 1991 Order Denying M/R. We vacate: CsOL 7, 8, 9 and 10; paragraph 1 of the December 11, 1991 Order Granting Motion; and the part of the December 11, 1991 Order Denying M/R that denies Nancy's August 19, 1991 M/R "with respect to the division of retirement." We remand the vacated matters for action by the family court consistent with this opinion.

## FACTS

The AITD states in relevant part as follows:

**IT IS AGREED AS FOLLOWS:**

\* \* \*

(5) *RETIREMENT:* [Nancy] is awarded 0.5 x 16 years 4 months divided by total years credited to [Robert's] retirement plan at AHSC [American Hospital Supply Company] x gross retirement benefits as and when received by [Robert] as her percentage share of [Robert's] retirement earned during the marriage of the parties. [Robert] is awarded the balance of the retirement benefits earned by reason of his employment at AHSC.

In November 1985, American Hospital Supply Company (AHSC) was "bought out" by a company now known as Baxter Healthcare Corporation (Baxter). The AHSC retirement plan was "converted" into the Baxter retirement plan (AHSC–Baxter Retirement Plan).

In 1990, Baxter created "a Special Retirement Program as part of the Baxter plan to provide certain employees with an incentive to retire early." The AHSC–Baxter Retirement Plan and the Baxter Special Retirement Program are described in the Amended Opening Brief as follows:

The [AHSC–]Baxter Retirement Plan offered retirement based on final average pay and a point system which combined age at time of retirement and years of benefit service. Although normal retirement age was 65, any combination of those two factors (age and service) equalling 85 points would allow full benefit retirement benefits at age 65. Employees could choose early retirement at

any time after they had 65 points but benefits would be reduced if the employee elected to start benefits before he had 85 points. The final average pay was determined by the average of the five (5) consecutive years, of the last ten (10) years of service, in which the retiree was paid the most. (R. at 318, Plaintiff's Exhibit 7 at p. 5).

On April 4, 1990, Baxter announced a major restructuring of the corporation. (R. at 318, Plaintiff's Exhibit 8). Subsequently, [Robert] was offered the opportunity to take a favorable early retirement under the [AHSC–]Baxter Retirement Plan. (R. at 318, Defendant's Exhibit "F", Plaintiff's Exhibit 7 at p. 5). This offer was contained in a "Baxter Special Retirement Program" (hereinafter "Baxter Special Retirement Program["] or "Baxter Special Program") which required acceptance of the offer between June 4 and July 31, 1990. (R. at 318, Plaintiff's Exhibit 7).

\* \* \*

The operative method of the Baxter Special Retirement Program was to give the eligible Employee credit for five (5) additional years of both age and service in exchange for acceptance of immediate early retirement. (R. at 318, Plaintiff's Exhibits 7, 10). . . .

Under these terms, [Robert's] Baxter Retirement Plan benefits would be increased as follows: First the five (5) years added to benefit service would increase the dollar amount of his retirement benefit. Second, the five (5) years added to his age would lower the reduction for early payment. (R. at 318, Plaintiff's Exhibit 7 at p.2).

In addition, under the Baxter Special Retirement Program, [Robert's] current base pay would be continued for three (3) months immediately after the December 31, 1990 retirement date, with the enhanced early retirement benefits to commence after that on April 1, 1991. (R. at 318, Plaintiff's Exhibit 7 at p.2). Further, [Robert] was to receive an additional pension benefit supplement of $250.00 per month, over and above the retirement calculated under the [AHSC–]Baxter Retirement Plan, until he was age 65. (R. at 318, Plaintiff's Exhibit 7 at p.2).

\* \* \*

[Robert] elected to take early retirement, as offered in the Baxter Special Retirement Program, and did in fact retire on December 31, 1990.

. . . Baxter . . . implemented a Baxter International Inc. and Subsidiaries Supplemental Pension Plan, an unfunded, non–qualified plan, to enable all participants in the [AHSC–]Baxter Pension Plan (and the Baxter Special Retirement Program) to receive the difference between the retirement benefit payable under the Baxter Pension Plan (as limited under the tax code) and the retirement benefit actually earned under the Baxter Pension Plan formula (as enhanced by the Baxter Special Retirement Program). (R. at 318, Defendant's Exhibit G). This would result in a payment of about $1,448.83 from the tax–qualified and regularly funded Baxter Pension Plan and about $3,147.71 from the newly created funding source, the Supplemental Pension Plan. The tax treatment of the two funding source plans

would be different. (R. at 318, Defendant's Exhibit G).

In his March 14, 1991 Motion, Robert asked the family court, *inter alia*, to enter a Qualified Domestic Relations Order directing payment of "the retirement benefits which are to begin on or about April 1, 1991."

The family court's December 11, 1991 Order Granting Motion states in relevant part as follows:

> 1. Commencing April 1, 1991, [Nancy] is awarded one–half times 16.33 years divided by 23 years of $2,064 per month which is $732.87 per month gross benefit. The $2,064.00 is the amount [Robert] would receive from the [AHSC–]Baxter International retirement program if he retired April 1, 1991 and he had not been offered the Special Retirement Program by Baxter, Inc. [Robert] is awarded the balance of benefits paid to him under the Baxter International, Inc. and Subsidiaries Pension Plan.
>
> The award to [Nancy] shall be written as a Qualified Domestic Relations Order. The award to [Nancy] shall be paid, to the extent that the Baxter retirement plan administrator can so pay, from the portion of the Baxter International, Inc. and Subsidiaries Retirement Plan that is qualified. . . .
>
> Each party shall be responsible for any state and federal tax due on the gross amount received by him or her.
>
> * * *

The family court's FsOF and CsOL state in relevant part as follows:

## FINDINGS OF FACT

\* \* \*

8. [Robert] . . . terminated his employment with Baxter Hospital Supply Corporation as of December 31, 1990.

9. Under the Special Retirement Plan [Robert] was entitled to receive $4,598.87 per month commencing April 1, 1991, with a reduction in benefits to $4,348.87 per month at his age 65 years. . . .

10. If [Robert] had terminated employment at Baxter Hospital Supply Corporation on December 31, 1990 and if there had been no Special Retirement Plan, [Robert] would have been entitled to $2,064.00 per month retirement compensation from Baxter, commencing with his 55th birthday. If [Robert] had not elected the Special Retirement Plan within the period that it was offered, [Robert] likewise would not have received the extra benefits.

\* \* \*

12. [Robert] was born on August 27, 1939. He was 51 years old on December 31, 1990.

\* \* \*

14. [Robert's] retirement benefits began to accrue on January 1, 1968. Total years of service as of December 30, 1990 were 23 years. Without the Special Retirement Plan, if [Robert] had terminated work on December 30, 1990, he would have been credited with 23 years of work. The terms of the special plan provided that he would be credited with an additional 5 years of "work".

\* \* \*

17. The Baxter Special Retirement Program was not foreseeable at the time of the divorce.

18. The Baxter Special Retirement Program was intended to induce certain employees, such as [Robert], to retire early.

19. The Baxter Special Retirement Program is a program to provide retirement benefits in lieu of continued employment at Baxter to regular retirement age.

20. [Robert] elected to participate in the Baxter Special Retirement Program to receive benefits in lieu of continuing his employment at Baxter and the compensation he could have expected to receive.

21. Had [Robert] elected to continue his employment at Baxter rather than take the Special Retirement Program, it is highly likely that his income from such employment would have been drastically reduced.

22. The Baxter Special Retirement Program is analogous to a golden parachute.

\* \* \*

## CONCLUSIONS OF LAW

\* \* \*

6. The enhanced retirement benefits which [Robert] receives because he elected the Special Retirement Plan are a compensation for salary [Robert] would have earned had he not retired and were to induce him to retire as of December 30, 1990.

7. The increased benefits offered by Baxter were not a part of the AHSC retirement that was

awarded in the divorce, nor were they a part of the retirement package that became the Baxter International Inc., and Subsidiaries Retirement Plan that resulted from the Baxter buy–out of AHSC. As such it was not foreseeable at the time of divorce and was not what was contemplated by the parties at the time of the divorce when they agreed that [Nancy] would receive a percentage share of [Robert's] AHSC retirement. Therefore, the enhanced portion of the retirement benefits is not part of the benefit which [Nancy] is entitled to share pursuant to the terms of the divorce decree.

\* \* \*

## DISCUSSION

Robert's Amended Answering Brief states in relevant part as follows:

... It is not disputed that Baxter, when it took over AHSC, kept the same pension plan for the AHSC employees and simply renamed the plan. It is also not disputed that, in 1990, in order to induce certain highly compensated employees to leave, Baxter provided additional benefits to these employees by way of a Special Retirement Plan. Clearly these added benefits were not foreseen at the time of the divorce and were not part of the AHSC benefits.

\* \* \*

The Family Court properly interpreted and enforced the provisions of the parties' [AITD] by applying [Nancy's] percentage award to that portion of the retirement benefits [Robert] would have received *absent* the enhanced benefits

granted him under [the] 6/4/90 to 7/31/90 special program. (Emphasis in original.)

## A.

When the family court approved and incorporated the AITD into the May 28, 1985 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree), the AITD lost its independent existence and merged into the Divorce Decree. *See* **Cooper v. Smith**, 70 Haw. 449, 454, 776 P.2d 1178, 1181 (1989); **Joaquin v. Joaquin**, 5 Haw. App. 435, 438, 698 P.2d 298, 301, *cert. denied*, 67 Haw. 685, 744 P.2d 781 (1985). "When interpreting a decree, the determinative factor is the intention of the court as gathered from all parts of the decree itself." **Nakata v. Nakata**, 3 Haw. App. 51, 55, 641 P.2d 333, 335 (1982). Therefore, what was foreseeable to the parties, or within their contemplation, is not relevant.

## B.

Retirement benefits may be nonvested, vested but not mature, and/or mature. **Linson v. Linson**, 1 Haw. App. 272, 618 P.2d 718 (1980). In Hawai'i divorce cases, the family court usually divides the employed party's retirement benefits from the employer by awarding the other party one–half of a percentage of all retirement payments if, as and when made. The formula for determining the percentage is to divide "the number of years credited to retirement during the marriage by the total number of years credited to retirement." **Cassiday v. Cassiday**, 68 Haw. 383, 384 n.1, 716 P.2d 1133, 1135 n.1 (1986) (quoting **Cassiday v. Cassiday**, 6 Haw. App. 207, 213–14, 716 P.2d 1145, 1150 (1986)). The formula recognizes that each year of employment played an integral part in acquiring the right to the retirement payments, credits each year

of employment with an equal share of the retirement payments, and proportionately segregates the pre–marital and post–marital years from the marital years.

When the retirement rights are nonvested, or vested but not mature, and the employed party is not retired at the time of divorce, the employed party (and/or his or her employer) has the sole discretion of when to retire. In balancing the employed party's discretion of when to retire against the other party's right to receive his or her percentage of the employed party's retirement payments, the judiciary trusts that the employed party's self–interest will overcome any desire to reduce or terminate the retirement payments and/or the other party's percentage. In return for having to wait for his or her equitable percentage of the employed party's retirement benefits until the employed party retires, the other party is awarded the percentage of all retirement payments if, as and when made. The longer the employed party remains employed after the divorce, the more the other party's percentage decreases, but, most often, the more the retirement payments increase. In other words, the reasonable expectation is that the other party will receive a smaller percentage of a bigger pie.

## C.

The Stouffers' case involves Hawai'i's usual division of retirement payments. When the Divorce Decree was entered, the relevant employer's name was AHSC. When AHSC was subsequently purchased by Baxter, the Divorce Decree's reference to AHSC automatically changed to Baxter. That change caused the AITD as incorporated in the Divorce Decree to be amended to read as follows:

(5) RETIREMENT: [Nancy] is awarded 0.5 x 16 years four months divided by total years credited to [Robert's] retirement plan at [Baxter] x gross retirement benefits as and when received by [Robert] as her percentage share of [Robert's] retirement earned during the marriage of the parties. [Robert] is awarded the balance of the retirement benefits earned by reason of his employment at [Baxter].

Thus, Robert's March 14, 1991 Motion required the family court to decide the following two numbers:

1. The "total years credited to [Robert's] retirement plan at [Baxter]"; and

2. Robert's "gross retirement benefits" from Baxter.

Robert's "retirement plan at [Baxter]" was not limited to the AHSC–Baxter Retirement Plan. Robert's retirement plan at Baxter included the Baxter Special Retirement Program. As a result of the Baxter Special Retirement Program, the total years credited to Robert's retirement plan at Baxter was not 23 years. It was 23 years plus 5 years or a total of 28 years. Similarly, at the time of the July 30, 1991 hearing on Robert's March 14, 1991 Motion, Robert's "gross retirement benefits" from Baxter were not $2,064 per month, they were $4,598.87 per month. In her Opening Brief, however, Nancy states that she makes no claim against the $250 per month payable to Robert until he is age 65. *See* FoF 9. Therefore, she seeks the formula percentage of only $4,348.87 per month.

Consequently, paragraph (5) of the AITD as incorporated into the Divorce Decree awards Nancy one–half of 16.333 divided by 28 or 29.166 percent of Robert's gross retirement payments from Baxter as and when received. As long as Robert's gross retirement payments are

$4,348.87 per month, Nancy's share is $1,289.87 per month.

## D.

Our decision is in accord with *Olivo v. Olivo*, 82 N.Y.2d 710, 624 N.E.2d 151, 604 N.Y.S.2d 804 (1993), a consolidation of two divorce cases. In *Olivo*, Eastman Kodak Company (Kodak) was the employer. In 1991, Kodak financed its early retirement plan through excess funds available in the Kodak Retirement Income Plan, an account from which retirement income benefits were paid. The early retirement plan was offered to employees who met the so–called "Rule of 75" — those whose total years at Kodak, added to the employee's age, equaled 75 or more. *Olivo* awarded the other party the formula percentage of (1) an Enhanced Retirement Income Benefit providing 100 percent of the employed party's pension benefit even though the employed party was not yet eligible for full pension. *Olivo* refused to award the other party any percentage of (2) a Social Security Bridge Payment providing the employees with a payment equal to Social Security from the date of retirement until the time the employees became eligible for Social Security and (3) a separation payment. We agree with *Olivo* with respect to (1). The Stouffers' case does not require us to express any opinion as to *Olivo*'s decisions with respect to (2) and (3), and we do not.

## E.

Our decision disagrees with *Berrington v. Berrington*, ___ Pa. ___, 633 A.2d 589 (1993). There, the date of separation was July 15, 1984, the complaint for divorce was filed on January 9, 1985, and the divorce was granted on July 27, 1987. It appears that the employed party

retired on February 28, 1990. The settlement agreement between the employed party and the other party awarded the other party 60 percent of the employed party's pension. The Pennsylvania Supreme Court held that the 60 percent did not apply to any portion of the employed party's retirement benefits which were based on post–separation salary increases, incentive awards, or years of service, yet made the other party wait until the employed party retired to receive her percentage share. In other words, it decided as if the settlement agreement limited its award to 60 percent of only that part of the employed party's pension that was earned prior to the date of separation.

In our view, if the other party is required to wait after the divorce until the employed party retires before he or she receives the percentage of the employed party's retirement payments, then he or she should be awarded the percentage of all of the employed party's retirement payments if, as and when made. Conversely, if the other party is validly awarded the percentage of only the retirement value that was acquired prior to the date of divorce, then he or she should not be required to wait until the employed party retires and should be awarded the present value of the percentage in lump sum or in monthly payments as if the employed party retired then. Therefore, we agree with the dissents by Justices Cappy and Montemuro.

## CONCLUSION

Accordingly, we vacate paragraph 1 of the December 11, 1991 Order Regarding Plaintiff's Motion for Reconsideration, Further Hearing Alteration and/or Amendment of Order; that part of the December 11, 1991 Order Regarding Plaintiff's Motion for Reconsideration, Further

Hearing Alteration and/or Amendment of Order that denies plaintiff's August 19, 1991 Motion for Reconsideration, Further Hearing, Alteration and/or Amendment of Order "with respect to the division of retirement[;]" and Conclusions of Law 7, 8, 9 and 10. We remand the vacated matters for action by the family court consistent with this opinion.

*Raymond Engle* (law offices of Bradley A. Coates, of counsel) on the briefs for plaintiff–appellant.

*T. Lynne Wasson* on the brief for defendant–appellee.