**Electronically Filed
Intermediate Court of Appeals
28732
31-JAN-2011
07:57 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

GARY SIDNEY BAKER, Plaintiff-Appellee,
v.
LUCYNA BIELSKI, fka LUCYNA BIELSKI BAKER,
Defendant-Appellant

NO. 28732

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DIVORCE NO. 06-1-2157)

JANUARY 31, 2011

NAKAMURA, C.J., FOLEY AND REIFURTH, JJ.

OPINION OF THE COURT BY FOLEY, J.

Defendant-Appellant Lucyna Bielski, formerly known as Lucyna Bielski Baker, (Bielski) appeals from the Decree Granting Absolute Divorce (Decree) filed on July 31, 2007 in the Family Court of the First Circuit (family court).[1] In the Decree, among other things, the family court ordered Plaintiff-Appellee Gary Sidney Baker (Baker) to pay alimony to Bielski for six months,

---

[1] Per diem Family Court Judge Linda S. Martell issued the Decree.

divided the parties' property, and ordered each party to be responsible for his or her own attorneys' fees.[2]

On appeal,[3] Bielski contends:

(1) The family court abused its discretion in dividing the parties' assets and debts.

(a) The family court either erroneously failed to divide Baker's commissions on pending escrow and non-binding reservation agreements (commissions) or erroneously awarded all of Baker's commissions to him because the commissions were marital assets and not Baker's separate property. Related to these arguments is Bielski's contention that in the family court's November 2, 2007 Findings of Fact and Conclusions of Law (FOF/COL), Finding of Fact (FOF) 140 is clearly erroneous and Conclusion of Law (COL) 6 is wrong.

(b) The family court either failed to equalize or erroneously equalized the parties' assets and debts. Related to this argument is Bielski's contention that COL 6 is wrong.

(i) The family court "did not literally award each party one-half of each and every asset and debt."

(ii) The family court apparently failed to rely on a property division chart when it divided the parties' assets and debts and so could not have had a reasonable means of determining the asset and debt division.

(iii) Even if the family court relied on a property division chart, the court improperly equalized the parties' assets and debts because the court erroneously included in the calculation an amount Baker owed for 2006 income taxes, after ruling that Baker was to be solely responsible for it; failed to divide credit card debt between the parties; and failed to include the amount Bielski owed for attorney's fees and costs in the calculation.

---

[2] The family court ordered the parties to pay for their own attorneys' fees, except for $2,500 of Bielski's attorneys' fees, which the court ordered Baker to pay.

[3] Bielski's Opening Brief fails to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(1) in that it does not include a subject index and table of authorities. Counsel for Bielski is warned that future noncompliance with HRAP Rule 28(b)(1) may result in sanctions against him.

(c) The family court erred in awarding Baker pre-marital contribution credit for the value of property located on Burnet Street in Oakville, Canada (the Burnet Property), based on the property's purchase value three years prior to the marriage, because the purchase was too remote in time to form the basis of the court's valuation. Related to this argument is Bielski's contention that FOFs 5 and 156.A are clearly erroneous and COLs 10 and 15 are wrong.

(2) The family court made procedural errors with regard to Baker's Trial Exhibit 47 (Exhibit 47).

(a) The family court erred by admitting into evidence Exhibit 47, which constituted hearsay without exception.

(b) The family court plainly erred by allowing Baker to testify regarding Exhibit 47 before it was admitted into evidence and over Bielski's objection to its admission into evidence.

## I.

On July 5, 2006, Baker filed a Complaint for Divorce, in which he requested a divorce from Bielski. The family court held trial on July 9 and 17, 2007. On July 31, 2007, the family court filed the Decree, and on November 2, 2007, the court filed its FOF/COL. Attached to the FOF/COL was a property division chart.

## II.

### A. Family Court Decisions

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

> Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)).

Schiller v. Schiller, 120 Hawai'i 283, 287, 205 P.3d 548, 552 (App. 2009).

B.    Division of Assets

"[T]he division of property is discretionary with the trial court and will not be disturbed on review unless abuse of discretion is clearly shown." Farias v. Farias, 58 Haw. 227, 231, 566 P.2d 1104, 1108 (1977).

C.    Findings of Fact

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A[n] FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001)).

D.    Conclusions of Law

A family court's conclusions of law "are reviewed on appeal de novo, under the right/wrong standard . . . [and] consequently, are not binding upon an appellate court and are freely reviewable for their correctness." Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (quoting In re Doe, 95 Hawaiʻi at 190, 20 P.3d at 623).

E.    Admission of Evidence

The family court has broad discretion to determine appropriate evidence for trial, and this court reviews such rulings under the abuse of discretion standard. See Miyamoto v. Lum, 104 Hawaiʻi 1, 7, 84 P.3d 509, 515 (2004) (the lower court's grant or denial of a motion in limine is reviewed for abuse of discretion); see also Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360 (generally, the family court has broad discretion).

III.

A.    DIVISION OF ASSETS AND DEBTS

"There is no fixed rule for determining the amount of property to be awarded each spouse in a divorce action other than as set forth in HRS § 580-47." Teller v. Teller, 99 Hawaiʻi 101, 107, 53 P.3d 240, 246 (2002) (footnote omitted) (quoting Au-Hoy v. Au-Hoy, 60 Haw. 354, 357, 590 P.2d 80, 82 (1979)). In Prell

4

v. Silverstein, 114 Hawai'i 286, 162 P.3d 2 (App. 2007), this court set forth general principles governing divorce distribution of property:

> HRS § 580-47 (2006 Repl.) provides . . . in relevant part, as follows:
>
>> **Support orders; division of property.** (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.
>> [. . . .]
>
> The Hawai'i Supreme Court has stated that the foregoing statute confers "wide discretion upon the family court." *Gussin v. Gussin*, 73 Haw. 470, 479, 836 P.2d 484, 489 (1992). However,
>
>> in adjudicating the rights of parties to a divorce, the family court strives for a certain degree of uniformity, stability, clarity or predictability in its decision-making and thus family court judges are compelled to apply the appropriate law to the facts of each case and be guided by reason and conscience to attain a just result. The partnership model is the appropriate law for the family courts to apply when exercising their discretion in the adjudication of property division in divorce proceedings.
>
> *Tougas v. Tougas*, 76 Hawai'i 19, 28, 868 P.2d 437, 446 (1994) (citations, internal quotation marks, and brackets omitted).
>
>> Under general partnership law, "each partner is entitled to be repaid his or her contributions to the partnership property, whether made by way of capital or advances." 59A Am. Jur. 2d *Partnership* § 476 (1987) (footnotes omitted). *Absent a legally permissible and binding partnership agreement to the contrary,* "partners share equally in the profits of their partnership, even though they may have contributed unequally to capital or services." *Id.*

§ 469 (footnotes omitted). Hawaii partnership law provides in relevant part as follows:

> **Rules determining rights and duties of partners.** The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:
>
> > (a) Each partner shall be repaid the partner's contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to the partner's share in the profits.
>
> *Gardner v. Gardner*, 8 Haw. App. 461, [465], 810 P.2d 239, 242 (1991) (quoting HRS § 425-118(a) (1985)). *Therefore, if there is no agreement between the husband and wife defining the respective property interests*, partnership principles dictate an equal division of the marital estate "where the only facts proved are the marriage itself and the existence of jointly owned property." *Gussin*, 73 Haw. at 484, 836 P.2d at 491 (quoting [*Hashimoto v. Hashimoto*, 6 Haw. App. 424, 427 n.4, 725 P.2d 520, 522 n.4 (1986)]).

*Id.* at 27-28, 868 P.2d at 445-46 (emphases added).

In *Hussey v. Hussey*, 77 Hawai'i 202, 881 P.2d 1270 (App. 1994), this court construed *Tougas* as establishing three classifications of property that must be divided and distributed in a divorce proceeding:

> **Premarital Separate Property.** This was the property owned by each spouse immediately prior to their marriage or cohabitation that was concluded by their marriage. Upon marriage, this property became either Marital Separate Property or Marital Partnership Property.
>
> **Marital Separate Property.** This is the following property owned by one or both of the spouses at the time of the divorce:
> > [. . . .]
>
> > c.   All property that (1) was acquired by the spouse-owner during the marriage by gift or inheritance, (2) was expressly classified by the donee/heir-spouse-owner as his or her separate property, and (3) after acquisition, was maintained by itself and/or sources other than one or both of the spouses and funded by sources other than marital partnership income or property.
>
> **Marital Partnership Property.** All property that is not Marital Separate Property.

*Id.* at 206-07, 881 P.2d at 1274-75. We also noted that

> although Marital Separate Property cannot be used by the family court to "offset," [*Tougas*, 76 Hawai'i] at 32, 868 P.2d at 450, the award of Marital Partnership Property to the other spouse, it can be used by the family court to "alter the ultimate distribution of Marital Partnership Property based on the respective separate conditions of the spouses." *Id.* In other words, Marital Separate Property is property that has been validly excluded from the marital partnership. *Although the family court may allow Marital Separate Property to reasonably influence the division and distribution of Marital Partnership Property, it cannot award any Marital Separate Property to the non-owner spouse.* Consequently, the five categories of [net market values (NMVs)] listed in *Tougas*, 76 Hawai'i at 27, 868 P.2d at 445, apply only to Marital Partnership Property, not to Marital Separate Property.

> *Id.* at 207, 881 P.2d at 1275[.]

114 Hawai'i at 291-94, 162 P.3d at 7-10 (brackets in original and footnote omitted).

### 1. Baker's commissions

Bielski contends the family court either erroneously failed to divide Baker's commissions, which were marital assets, or erroneously awarded the commissions to Baker because they were not Baker's separate property. Related to these arguments is Bielski's contention that COL 6 is wrong and FOF 140, clearly erroneous. COL 6 provides that "[t]he court properly applied the law of equitable distribution and exercised its discretion in dividing the assets and debts of the marital estate equally between the parties." FOFs 139 and 140, in the "Alimony" section of the FOF/COL provide:

> 139. [Bielski] spent much time and money on many subpoenas, which yielded no hidden assets of [Baker].

> 140. The only additional potential income [Bielski] stood to receive [in the divorce] was from two newly acquired escrows, which were not due to close until 2008 and 2009. These escrows were for units in condominium buildings not yet constructed, and thus any commission will [sic] be earned [by Baker] well after the divorce action concluded.

Throughout the marriage, Baker worked in real estate, first as a sales agent, then as a broker. At trial, on direct examination by his counsel, Baker testified that Bielski disputed the 2006 income amount Baker entered on his Asset and Debt Statement. Baker stated that during discovery, Bielski was fixated on discovering commissions she thought Baker made on

escrows from that year, but at that time Baker believed all of the escrows had been cancelled because the units were in a project with financial problems. A week before trial, Baker learned that one of the escrows was still open. The escrow was for a unit in a condominium building under construction at the time of trial. Baker would not receive a commission on that escrow until it closed in 2008.

On direct examination by Bielski,[4] Baker testified that at the time of trial he had two escrows -- one of which he had opened that day -- and three non-binding reservation agreements.[5] He later testified that clients of only two of the non-binding reservation agreements had paid their deposits and the third client had not yet paid, "so that's kind of risky." When Bielski began asking Baker why he had not reported the escrows on his Asset and Debt Statement, the court interjected and stated that the escrows did not constitute property because "[a]n escrow can change, it can fall out of escrow." Baker testified that one of the escrows was scheduled to close on "August the 31st" and the other, in 2008.

Intangible property, such as income, is subject to equitable distribution. Teller, 99 Hawai'i at 109, 53 P.3d at 248 (holding that "intangible property is subject to equitable distribution"). It is well-established that a party's income earned and acquired during the marriage is part of the marital estate. See Hatayama v. Hatayama, 9 Haw. App. 1, 12, 818 P.2d 277, 282 (1991) ("During a marriage, in the absence of a legally permissible and binding agreement otherwise, the husband's and the wife's earnings are marital partnership earnings[.]"); Wakayama v. Wakayama, 4 Haw. App. 652, 654, 673 P.2d 1044, 1046 (1983) ("[D]uring marriage a spouse's wages and the products of a spouse's personal efforts are marital assets[.]"). The marital estate "means anything of present or prospective value, owned by

---

[4] Bielski represented herself at trial.

[5] Baker testified that in a non-binding reservation agreement, a client put down money to reserve the right to purchase a unit in a new construction project. The agreement became binding once a public report was issued and accepted by the State of Hawai'i at some point during the construction.

either or both of the parties on the date of the conclusion of the evidentiary part of the trial (DOCOEPOT)." Malek v. Malek, 7 Haw. App. 377, 380, 768 P.2d 243, 246 (1989) (internal quotation marks, citation, and brackets in original omitted). The question in the instant case is whether the family court should have included in the marital estate Baker's commissions, which he earned in part or in whole during the marriage, but did not expect to receive until after the DOCOEPOT. The issue is a case of first impression in this jurisdiction.

In Teller, 99 Hawai'i at 110-11, 53 P.3d at 249-50, the Hawai'i Supreme Court stated that in determining whether a party owned particular types of intangible property before or during a marriage, the vesting approach should be used. The supreme court held that whether a trade secret or patent vested before or during the marriage would determine whether they were separate or marital property. Id. In other cases, this court has held that regardless of when they vested, certain kinds of retirement benefits were part of the marital estate. In Stouffer v. Stouffer, 10 Haw. App. 267, 278, 867 P.2d 226, 231 (1994), we stated that a person is entitled to a portion of retirement benefits earned by his or her spouse during the marriage, even if the benefits are nonvested or vested but not mature at the time of divorce. We explained that in such cases, the family court usually awards the non-benefit-earning spouse a percentage of the retirement payments "if, as and when made." Id. at 277, 867 P.2d at 231. See also Linson v. Linson, 1 Haw. App. 272, 283, 618 P.2d 748, 754 (1980) (holding that "federal law does not bar Hawaii family courts from considering and dividing husband's nonvested military retirement benefits as part of the estate of the parties under HRS § 580-47").

In still other cases, without considering vesting, we determined whether intangible assets earned during the marriage, but receivable after divorce, were part of the marital estate. In Jones v. Jones, 7 Haw. App. 496, 499, 780 P.2d 581, 584 (1989), we stated that "[a]n annuity for life earned during the marriage, but receivable post-divorce, is property divisible in a

divorce action."  In <u>Kuroda v. Kuroda</u>, 87 Hawai'i 419, 958 P.2d 541 (App. 1998), we held that "the proceeds received <u>or receivable</u> by a partner from a third-party for tort injuries suffered during the marriage" should be included in the marital estate.  <u>Id.</u> at 428, 958 P.2d at 550 (emphasis added).  On the other hand, in <u>Schiller</u>, 120 Hawai'i at 308, 205 P.3d at 573, we stated that "[i]nheritances a spouse expects to acquire after divorce are speculative, because the testator is free to change his will at any point in the future, and, "[l]ike other speculative assets which do not constitute property, they are not part of the divisible estate" in a divorce action.  In <u>Jones</u>, we held that "disability pay is paid in lieu of and is akin to income that is earned and received post-divorce and is not property divisible in a divorce case."  7 Haw. App. at 500, 780 P.2d at 584.

In the instant case, the family court apparently declined to include the escrow commissions in the marital estate because they were too speculative since Baker would receive them post-divorce and the units were in a project that had not yet been constructed.  However, as the authorities we cite to above reveal, whether a party is to acquire an asset after the DOCOEPOT alone is not dispositive.  Further, although Baker testified that his other escrows had been cancelled because the units were in condominium projects with financial problems, in the record on appeal there is no evidence that his existing escrows were for units in projects with financial or other problems or any other evidence that those escrows might not close.  Nothing in the record suggests that Baker had to perform any additional duties to receive his escrow commissions or do anything after the marriage was dissolved to earn those commissions.  For these reasons, and because presumably Baker's expectancy was based on a contractual agreement, the escrow commissions in this case are unlike the husband's expectancy under his mother's will in <u>Schiller</u>.  Also, because it is undisputed that the escrow commissions constitute "income" earned during the marriage, they are unlike the disability compensation discussed in <u>Jones</u>.  We

are unpersuaded that the commissions were too speculative to be included in the marital estate.

The family court did not explicitly address Baker's non-binding reservation agreements in the Decree, FOF/COL, or property division chart appended to the FOF/COL. For the same reasons we hold that the family court abused its discretion by omitting the escrow commissions from the marital estate, we hold that the court abused its discretion by excluding from the marital estate any commissions receivable by Baker on the non-binding reservation agreements.

Cases in other jurisdictions hold that commissions earned during a marriage but receivable after the marriage's dissolution should be included in the marital estate. See, e.g., Ray v. Ray, 916 S.W.2d 469, 469-70 (Tenn. Ct. App. 1995) (holding that under Tennessee statute governing division of property upon divorce, husband's contract as insurance agent entitling him to commissions on premiums paid were properly considered part of marital estate, regardless of when they vested); Freeman v. Freeman, 457 S.E.2d 3, 5 (S.C. Ct. App. 1995) (holding that renewal commissions on insurance policies sold by spouse during marriage, but paid after dissolution of marriage, were marital property subject to equitable distribution); Hartland v. Hartland, 777 P.2d 636, 643 (Alaska 1989) (holding that stockbroker husband's deferred commissions should be considered marital property, even though husband would not receive them until after dissolution of marriage); Niroo v. Niroo, 545 A.2d 35, 39 (Md. 1988) (holding that contractually vested rights in renewal commissions on insurance policies sold by husband during marriage, but accruing after dissolution of marriage, were marital property); In re Marriage of Johnson, 576 P.2d 188, 191 (Colo. App. 1977) (holding that husband's rights to real estate commissions that arose prior to dissolution of marriage hearing, but which he would not acquire until after property division hearing, constituted marital property subject to division).

Given the foregoing, the family court abused its discretion by not characterizing Baker's commissions as marital

property, subject to division, and FOF 140 is clearly erroneous. COL 6 is wrong insofar as it relates to Baker's commissions.

### 2. Equalization

Bielski contends the family court either failed to equalize or erroneously equalized the parties' assets and debts. Related to this argument is Bielski's contention that COL 6 is wrong.

### a. Failure to rely on property division chart

Bielski argues that the family court apparently failed to rely on a property division chart when it divided the parties' assets and debts because the court did not attach such a chart to its Decree. She infers from the chart's absence that the family court did not have a reasonable means of determining the asset and debt division. The family court did not attach a property division chart to its Decree, but did attach one to its later-filed FOF/COL.

The family court does not explain why it attached the property division chart only to the FOF/COL or cited to the chart in its FOF/COL, or state whether it considered the chart when dividing the parties' assets and debts. The Decree was filed on July 31, 2007, and the property division chart indicates it was prepared by Baker's attorney, Donna Davis Green (Green), on October 31, 2007, and received by the family court on November 1, 2007. Therefore, it would appear that the family court did not rely on that particular version of the chart when it issued its Decree. On the other hand, we fail to see why the family court would attach the chart to the FOF/COL where the court states that it "applied the law of equitable distribution," except to suggest that the court referred to some version of that chart or another similar chart when dividing the parties' property.

Bielski cites to no authority to support her argument that the family court was required to attach a property division chart to its Decree, no evidence that the court did not have a reasonable means of determining the asset and debt division, and no discrepancy between the FOF/COL and the Decree. She cites to Wintermeyer v. Wintermeyer, 114 Hawai'i 96, 99, 157 P.3d 535, 538

(App. 2006), to support this point; however, there, this court merely observed that the Family Court of the Second Circuit had appended an incomplete property division chart to its findings of facts and conclusions of law.

### b.    Failure to equalize properly

Bielski argues that even if the family court relied on a property division chart, the court improperly equalized the parties' assets and debts.

#### i.    Failure to split each asset and debt equally

Bielski maintains the family court erroneously failed to "literally award each party one-half of each and every asset and debt." She cites to Helbush v. Helbush, 108 Hawai'i 508, 122 P.3d 288 (App. 2005), in which we stated that "partnership principles dictate an equal division of the marital estate where the only facts proved are the marriage itself and the existence of jointly owned property." Id. at 513, 122 P.3d at 293 (internal quotation marks and citation omitted).

"[T]he division and distribution of property pursuant to a divorce need not be equal but should be just and equitable." Teller, 99 Hawai'i at 107, 53 P.3d at 246. As we have consistently observed, "the family court has broad discretion to divide and distribute the estate of the parties in a just and equitable manner. As such, the family court assesses and weighs all valid and relevant considerations to exercise its equitable discretion in distributing marital property." Booth v. Booth, 90 Hawai'i 413, 417, 978 P.2d 851, 855 (App. 1999) (internal quotation marks and citations omitted).

The portion of Helbush to which Bielski cites is inapplicable because here, the marriage itself and the existence of jointly owned property were not the only facts proved. Hence, the family court was not required to divide each asset and debt equally, and the court properly equalized the property based on

numerous, undisputed FOFs regarding the circumstances of the marriage pursuant to HRS § 580-47.[6]

## ii. Baker's 2006 income taxes

Bielski argues that in equalizing the parties' assets and debts, the family court erroneously included in the calculation an amount owed in 2006 income taxes after the court had ruled that Baker was to be solely responsible for the debt. The Decree provides: "The parties filed separate tax returns for calendar year 2006, even though they lived together for the first five months. [Baker] has agreed to be fully responsible for any tax consequence for the tax year 2006." FOF 107 in the FOF/COL provides that Baker did not seek any contribution from Bielski for the taxes he owed in 2006. FOF 160 provides that Baker "assumed . . . the $20,000.00 plus debt that would be due and owing to the IRS and State of Hawaii for [sic] 2006 tax return."

In the portion of the property division chart entitled "Part A: Proposed Division of Existing Assets and Debts" (Part A), the assets and debts of the marital estate, Baker, and Bielski are totaled. Part A attributes to Baker $18,263 owed in federal taxes and $3,492 owed in state taxes for 2006. Also assigned to Baker is partnership debt, including some credit card debt, which he voluntarily assumed. In the chart, after the parties' respective partnership profits and losses are added together, an equalization payment is applied to the totals. The equalization payment represents the value transferred from Bielski's share of the total partnership profits and losses to Baker's share to ensure the parties receive a similar amount of total value from the marital estate.

In neither the Decree nor the FOF/COL did the family court state it would omit the tax debt from the equalization calculation, and there is no indication in the record on appeal that when Baker volunteered to assume the debt, he meant to

---

[6] HRS § 580-47(a) provides that when "finally dividing and distributing the estate of the parties," "the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case."

14

remove it from the calculation. The tax debt is not Baker's separate property because it was acquired during the marriage. Given the family court's "broad discretion to divide and distribute the estate of the parties in a just and equitable manner," Booth, 90 Hawaiʻi at 417, 978 P.2d at 855 (internal quotation marks and citation omitted), the family court did not err by including the tax debt in the equalization calculation.

### iii. Credit card debts

Bielski argues that the family court failed to mention in the Decree three partnership debts included in the property division chart: $21,000 owed on a United Visa credit card, $900 owed on a Pier 1 credit card, and $10,000 owed on a Bank of America Visa credit card (collectively, the credit card debt). Bielski maintains the family court's failure to mention these debts in the Decree reveals that the court did not equalize all of the marital partnership property.

FOF 127 in the FOF/COL provides that Baker "agreed to pay all of the debts listed on page 3 of his Asset and Debt Statement in the total amount of $48,830.53, with the exception of the Discover Card." (Footnote omitted.) Page three of Baker's Asset and Debt Statement (Baker's Trial Exhibit 54) includes the debts owed on the credit cards. FOF 160 provides that Baker "assumed all other marital debt," besides the amount due and owing on the Discover Card. The Decree does not specifically mention the credit card debts.

Bielski provides no authority for her argument that the family court was required to refer in the Decree to marital debt Baker voluntarily assumed, including the credit card debt. Bielski cites to no evidence in the record that the family court failed to consider the credit card debt when issuing its Decree, and, in fact, the listing of the debt in the property division chart suggests the court did consider it.

### iv. Attorney's fees

Bielski argues as follows that the family court erroneously failed to include her attorney's fees in the equalization:

> The [family] court included the attorney's fees debts
> that [Baker] was responsible for (Coates & Frey and Law
> Offices of Donna Davis Greene) in said property division
> chart and the Decree.  In contrast, the [family] court did
> not include [Bielski's] attorney's fees and costs in said
> property division chart despite the fact that her former
> counsel (Richard Diehl, Esq.) was granted a charging lien
> against [Bielski's] share of the marital assets in the
> amount of $6,200.77, on July 5, 2007 (four days before the
> first day of trial).  Furthermore, said Decree's provision
> that, "[e]ach party shall be responsible for their own
> attorney's fees," is not clear on whether the [family] court
> considered said debts not to be marital debts.  The parties'
> respective attorney's fees debts are marital debts, having
> been incurred prior to the [DOCOEPOT].  As marital and debts
> [sic], they should have been subject to equalization by the
> [family] court.

(Record references omitted.)

The Decree provides in relevant part:

> Each party shall be responsible for their own
> attorney's fees.  Notwithstanding the foregoing, [Baker]
> shall pay, as and for [Bielski's] attorney's fees, $2,500.00
> from the sale proceeds of one of the marital properties.
> Escrow shall be instructed to cut a check directly to Coats
> & Frey for such sum.

FOF 49 provides that "[o]n December 14, 2006, [Bielski] filed a second Motion and Affidavit for Pre Decree Relief requesting $3,000.00 in legal fees to fund [Bielski's] ongoing formal discovery[.]"  FOF 52 states that the family court ordered that a one-time payment towards Bielski's legal fees in the amount of $2,500 be made, "but no more thereafter."  FOF 161 provides that Baker had been ordered to pay $2,500 in Bielski's attorney's fees "pursuant to a prior court order."

On June 28, 2007, Richard J. Diehl (Diehl), Bielski's attorney who had withdrawn from representing her in the divorce, filed a motion for a charging lien.  At the hearing on the motion, Diehl requested a lien in the amount of $6,200.77 against the marital estate.  The family court filed an order granting the motion.  On September 7, 2007, Diehl filed a motion for an additional charging lien in the amount of $15,000.  At the September 13, 2007 hearing on the motion, Diehl requested that the lien be on real property the parties owned in Hawai'i (Hawai'i property), which, pursuant to the Decree, was to be sold and the proceeds divided between the parties.  The family court filed an order granting the motion.  FOF 129 in the FOF/COL provides that

Bielski "paid $15,000.00 to her second attorney, [Diehl] for legal representation."[7]

In the property division chart, the $2,500 debt is assigned to Baker, as well as an amount of money he owed Green (his attorney) in the amount of $14,430.53. Nowhere in the Decree or the FOF/COL did the family court mention Diehl's charging lien on the Hawai'i property, and the lien is not included in the property division chart. Given the complete absence of any evidence that the family court considered the lien when it equalized the parties' assets and debts, we infer that the court erroneously omitted the lien from its equalization calculation.

### v. Result

To the extent that it relates to Diehl's charging lien, COL 6 is wrong.

### 3. Valuation of Burnet Property

Bielski contends the family court erred in awarding Baker pre-marital contribution credit for the value of the Burnet Property, which Baker purchased three years prior to the date of marriage (DOM) and sold during the marriage. She maintains that three years prior to the DOM was too remote in time from when the family court divided the property to form an accurate basis for the court's valuation. Related to this argument is Bielski's contention that FOFs 5 and 156.A are clearly erroneous and COLs 10 and 15 are wrong.

FOF 5 provides:

> 5. On April 22, 1991, [Baker], prior to meeting [Bielski], purchased [the Burnet Property] for $179,900.00. On July 19, 1994, prior to the parties' marriage, the terms of the [Burnet Property's] mortgage were amended to reflect that the debt due and owing on the property was $126,126.01.

(Footnotes omitted.)

FOF 156.A provides:

> A. [Baker] was awarded his Category 1 capital contribution from his the [sic] sale of his Canadian pre-marital property [the Burnet Property] in the amount of

---

[7] FOF 126.E in the FOF/COL provides that Bielski "presented no testimony or other evidence verifying or establishing an attorney debt of $18,000.00." However, after an exhaustive review of the record on appeal, we cannot determine to what the $18,000 refers.

$53,774.00. One-half of that reimbursement ($26,887.00) was to be paid from the sales proceeds of each of the parties' properties upon closing.

COL 10 provides:

10. It was just and equitable for the court to award [Baker] the return of his Category 1 capital contribution of $53,774 accrued from the sale of a house in Canada prior to the parties' marriage. This amount constituted [Baker's] "investment into the marital economic partnership."

COL 15 provides:

15. The court further exercised its discretion properly in measuring the condition each party would be left in as a result of the divorce by ordering that the return of [Baker's] Category 1 contribution and fifty percent of [Bielski's] portion of the Discover Card debt not be taken out of the equity from just one of the sales proceeds of the parties' properties, but rather to be split between the equity of both the Honolulu and Canadian properties. HRS § 580-47(a).

At trial, Baker testified that he wanted the family court to award him the value of the Burnet Property's equity prior to the marriage as his Premarital Separate Property. Baker testified that he based his valuation of the Burnet Property on the price he paid for it in 1991 ($179,900), not the amount he later sold it for in 1994 ($217,000). Baker stated that Exhibit 47 was a tax roll for the Burnet Property. The exhibit showed that the balance on the mortgage on July 19, 1994, or three weeks before the DOM on August 15 of that year, was $126,126.01. Subtracting the outstanding mortgage amount from the property's 1991 purchase price, Baker estimated that the property's equity prior to the marriage was approximately $53,774. He testified that he used the proceeds from the sale of the Burnet Property in 1999 to purchase the Queen's Quay property in Canada.

When dividing and distributing the value of the property of the parties in a divorce case, the relevant value is, as a general rule, the fair market value (FMV) of the parties' interest therein on the relevant date. We define the FMV as being the amount at which an item would change hands from a willing seller to a willing buyer, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.

Antolik v. Harvey, 7 Haw. App. 313, 318-19, 761 P.2d 305, 309 (1988). In Helbush, 108 Hawai'i at 512, 122 P.3d at 292, we stated that Category 1 property is the "property separately owned

by one spouse on the [DOM]."[8]  The NMVs in Category 1 represent "the parties' capital contributions to the marital partnership." Id. (quoting Gardner v. Gardner, 8 Haw. App. 461, 466, 810 P.2d 239, 242 (1991)).  "Under general partnership law, 'each partner is entitled to be repaid his contributions to the partnership property, whether made by way of capital or advances.'  59 Am. Jur. 2d Partnership § 476 (1987)[.]"  Helbush, 108 Hawai'i at 513, 122 P.3d at 293 (quoting Gardner, 8 Haw. App. at 464, 810 P.2d at 242).  "Category 1 . . . NMVs are the 'partner's contributions' to the Marital Partnership Property that, assuming all valid and relevant considerations are equal, are repaid to the contributing spouse[.]"  Helbush, 108 Hawai'i at 513, 122 P.3d at 293 (quoting Hussey v. Hussey, 77 Hawai'i 202, 207, 881 P.2d 1270, 1275 (App. 1994)).

　　　　To the extent we can understand her argument, Bielski maintains the family court erroneously accepted Baker's valuation of the Burnet Property at the time he purchased it three years prior to the DOM, which was too remote in time from when the court divided the property to form the basis for an accurate

---

　　　[8]  In Helbush, we explained that Category 1 is one of five categories of NMVs the family court can utilize when dividing property in divorce cases:

> Category 1. The [NMV], plus or minus, of all property separately owned by one spouse on the [DOM] but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 2. The increase in the NMV of all property whose NMV on the DOM is included in category 1 and that the owner separately owns continuously from the DOM to the DOCOEPOT[.]
>
> Category 3. The date-of-acquisition NMV, plus or minus, of property separately acquired by gift or inheritance during the marriage but excluding the NMV attributable to property that is subsequently legally gifted by the owner to the other spouse, to both spouses, or to a third party.
>
> Category 4. The increase in the NMV of all property whose NMV on the date of acquisition during the marriage is included in category 3 and that the owner separately owns continuously from the date of acquisition to the DOCOEPOT.
>
> Category 5. The difference between the NMVs, plus or minus, of all property owned by one or both of the spouses on the DOCOEPOT minus the NMVs, plus or minus, includable in categories 1, 2, 3, and 4.

108 Hawai'i at 512, 122 P.3d at 292 (quoting Malek v. Malek, 7 Haw. App. 377, 380 n.1, 768 P.2d 243, 246 n.1 (1989)).

valuation. Bielski provides no authority for this argument, and we find none. Baker's calculation that the property's equity prior to the marriage was $53,774 was based on the 1991 purchase price of the property minus the outstanding mortgage amount on the DOM, which price clearly represented the amount at which the item changed hands from "a willing seller to a willing buyer." Antolik, 7 Haw. App. at 319, 761 P.2d at 309. The family court did not abuse its discretion by crediting Baker with his capital contribution toward the Burnet Property or accepting Baker's valuation of the property's equity prior to the DOM. FOFs 5 and 156.A are not clearly erroneous, and COLs 10 and 15 are not wrong.

### B. EXHIBIT 47

At trial, on direct examination, Baker's counsel asked Baker to refer to Exhibit 47. Bielski objected to the introduction of the evidence because it was "just like something you can print off the Internet. . . . [T]his is not an official document[.]" Baker's counsel stated that the evidence was offered to prove Baker's Category 1 contribution to the Burnet Property, and the exhibit was similar to what one would find when looking up property tax information on the internet. The family court stated, "Well, you haven't moved it into evidence yet, [Baker's] just testifying" and "So go ahead and testify about it." Baker testified the exhibit was tax documentation for the Burnet Property that stated the property's purchase price, balance owing before the parties' marriage, and other information. The family court then received Exhibit 47 into evidence over Bielski's objection.

### 1. Admission of Exhibit 47

Bielski contends the family court erred by admitting into evidence Exhibit 47, which constituted hearsay without exception because it was made by third parties and the family court did not rule that the exhibit was trustworthy. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hawaii Rules of Evidence

(HRE) Rule 801. Hearsay is not admissible, unless it falls under a hearsay exception. HRE Rules 802, 802.1, 803, and 804.

The Hawai'i Supreme Court has recognized that competent evidence of value must support the family court's division of property. Booth, 90 Hawai'i at 416, 978 P.2d at 854 (citing to In re Marriage of Aud, 491 N.E.2d 894, 898 (Ill. 1986)). However, a party's failure to provide the court with evidence of market value leaves the court discretion to review the full record to determine an equitable value. Teller, 99 Hawai'i at 115, 53 P.3d at 254. In addition, the supreme court has acknowledged that when a party offers no evidence of an asset's value, the party cannot complain about a court's disposition of the asset. Booth, 90 Hawai'i at 416, 978 P.2d at 854 (citing to In re Marriage of Tyrrell, 477 N.E.2d 523, 524 (1985)).

In the instant case, Bielski provided no evidence of the Burnet Property's value, and so is precluded from complaining about its disposition. Booth, 90 Hawai'i at 416, 978 P.2d at 854. Further, without addressing whether the family court properly admitted Exhibit 47 into evidence, any error on the part of the family court was harmless because Baker had personal knowledge of the price he paid for the Burnet Property and the outstanding mortgage balance prior to the DOM without reference to the exhibit and Baker's testimony on these matters would have comprised the only evidence presented at trial regarding the property's value at DOM. Teller, 99 Hawai'i at 115, 53 P.3d at 254. The family court did not err by crediting to Baker the value of his capital contribution to the Burnet Property as his Category 1 Marital Separate Property.

Bielski argues that the family court plainly erred by allowing Baker to testify regarding Exhibit 47 before it was admitted into evidence. Bielski concedes she did not object on this ground. Given our holding that any error in admitting Exhibit 47 was harmless, we find no plain error.

## IV.

The Decree Granting Absolute Divorce filed on July 31, 2007 in the Family Court of the First Circuit is affirmed except

for the portion titled "Property Division," which portion is vacated and remanded for proceedings consistent with this opinion.

On the briefs:

Stephen T. Hioki
for Defendant-Appellant.

Gary Sidney Baker
Plaintiff-Appellee pro se.

*Craig H. Nakamura*

*Daniel R. Foley*

*Lawrence M. Reifurth*